The STATE of Ohio, Appellee,

v.

DOLCE, Appellant.

[Cite as *State v. Dolce* (1993), 92 Ohio App.3d 687.]

Court of Appeals of Ohio,
Huron County.

No. H–92–031.

Decided Dec. 30, 1993.

688

*Russell V. Leffler,* Huron County Prosecuting Attorney, and *Richard R. Woodruff,* Assistant Prosecuting Attorney; *Lee Fisher,* Attorney General, and *Denise Smith Golonka,* Assistant Attorney General, for appellee.

*W. Patrick Murray,* for appellant.

*Per Curiam.*

This case is before the court on appeal from two judgments of the Huron County Court of Common Pleas, which were entered after a jury found defendant-appellant, Alfred J. Dolce, D.C., guilty of insurance fraud in violation of R.C. 2913.47 and guilty of Medicaid fraud in violation of R.C. 2913.40. Dolce was sentenced and ordered to pay the costs of the investigation and prosecution. From those judgments, Dolce now raises the following assignments of error:

"I. The trial court erred in overruling the motions for acquittal as there was insufficient evidence from which the finder of fact could conclude that all elements of the crimes charged were proven beyond a reasonable doubt.

"II. Defendant-appellant's conviction of insurance fraud in violation of R.C. 2913.47 cannot stand as the bulk of the evidence presented involved alleged conduct which occurred prior to the enactment of R.C. 2913.47, and no testimony was presented to show that after the statute became law, defendant-appellant charged for services not rendered and the value of those services exceeded three hundred dollars ($300).

"III. The trial court erred when it permitted the state to introduce evidence of Ohio Administrative Code provisions to prove conduct constituting fraud or theft in a criminal prosecution.

"IV. The trial court erred refusing to dismiss the charges or, at a minimum, refusing to suppress all evidence involving findings during the time periods the state could not produce appointment books which had been seized from defendant-appellant and were not specifically itemized.

"V. The trial court erred prejudicing appellant in ordering appellant's counsel, under the threat of a contempt citation, to produce work product documents to the state which the state then used to buttress its case against appellant.

"VI. The trial court committed a number of evidentiary errors the combined effect of which deprived defendant-appellant of a fair trial.

"VII. The trial court was without authority to impose upon defendant-appellant the costs of investigation and prosecution incurred in the insurance fraud case and failed to afford appellant any due process rights before imposing the costs of investigation and prosecution with respect to both the insurance fraud and Medicaid fraud convictions."

The relevant facts of this case are as follows. Alfred J. Dolce is a chiropractor who obtained his doctor of chiropractic degree in 1982 and thereafter opened his first office in Huron, Ohio. In 1986, he acquired a second office in Norwalk, Ohio, and in 1987 he opened a third office in Sandusky, Ohio. The Huron office closed in February 1990, followed by the closing of the Sandusky office in July 1990.

In 1984, Dolce entered into a provider agreement with the Ohio Department of Public Welfare, Medical Assistance Program, under which he agreed to treat welfare recipients whose medical expenses were covered under the Medicaid program. Subsequently, Dolce entered into a participation agreement with Blue Cross of Northwest Ohio (n.k.a. Blue Cross Blue Shield of Ohio) under which he agreed to accept payment from Blue Cross for those patients insured by Blue Cross.

On January 25, 1991, the Norwalk Police Department conducted a search, pursuant to warrant, of Dolce's Norwalk office, car, home and the home of his parents. Based on a tip from Dolce's former employee, Melissa Stacy, the Norwalk Police Department along with agents from the Attorney General's Office of Medicaid Fraud Control, the Ohio Bureau of Workers' Compensation ("OBWC") and Blue Cross had begun an investigation into Dolce's billing practices. In particular, the investigators suspected that Dolce was billing Medicaid, the OBWC and Blue Cross for services not rendered. In executing the search warrant, members of the Norwalk Police Department seized any and all documentary evidence which might confirm their suspicions.

On June 17, 1991, the Huron County Grand Jury indicted Dolce on one count of Medicaid fraud in violation of R.C. 2913.40(B), two counts of insurance fraud in violation of R.C. 3999.22(A)(1), (2) or (3), and one count of theft (*i.e.*, workers' compensation fraud) in violation of R.C. 2913.02(A)(2) or (3) (case No. CRI 91–457). Previously, however, the General Assembly had repealed the insurance fraud provisions of R.C. 3999.22 and enacted R.C. 2913.47, insurance fraud, in its stead. Therefore, on September 16, 1991, Dolce was indicted on one count of insurance fraud in violation of R.C. 2913.47 (case No. CRI 91–700), and the state filed a motion to dismiss the insurance fraud counts in case No. CRI 91–457.

Various discovery motions were filed by Dolce and the state, and on January 2, 1992, Dolce filed a motion to suppress all of the evidence relating to or derived from all the documents and items seized from his home, office and his parents' home. Dolce asserted that the officers' failure to properly inventory all of the items seized had seriously prejudiced his defense in that certain documents, namely appointment books, necessary to an adequate defense, had been seized but could not be located. Upon an evidentiary hearing, the court concluded that a detailed inventory of the thousands of pages of business records would have been impractical and that the general inventory which was taken and returned to Dolce complied with Crim.R. 41(D). The court further concluded that all items seized were accounted for and therefore denied the motion.

The case proceeded to a lengthy jury trial from February 25 to March 7, 1992. In pertinent part, the testimony and documentary evidence revealed the following. Jody Mayer worked for Dolce from January 1990 until January 1991 at his

Norwalk office. Mayer did filing, billing, therapy and set up appointments for patients. Mayer testified that in the patient files and appointment books, "NS" meant no show, "RS" meant rescheduled and a ">" meant missed appointment, failed to cancel. If a patient had failed to show but then came in later in the day, the "NS" would be erased from the appointment book. If the patient rescheduled, the "RS" would remain in the appointment book and the name would be moved to the new time. She further testified that when a patient failed to show, the patient's usual therapy would be entered in the patient file and Blue Cross or Medicaid would be billed as though the patient had received the usual therapy. Mayer also helped prepare the billings which she would then submit to Dolce for his review and signature. Any questions she had about billing, however, were taken to Lori Michalik, the office manager.

Lori Michalik testified several times throughout the trial. Michalik was originally indicted as well, but was later given immunity in exchange for her testimony. Michalik worked for Dolce from 1987 until 1991 as an office manager. She too prepared Medicaid and Blue Cross billings and stated the office policy of billing for missed or rescheduled appointments. She testified, however, that while the ">" meant a patient failed to show at the scheduled time, it did not mean that the patient did not come in at a later time or at a different office. In her opinion, the majority of patients with a ">" in their file came in later in the day or to a different office. The ">" therefore was written into the file next to the abbreviations for services to indicate the services that were to be rendered, and Medicaid, Blue Cross or the OBWC were billed for that service to be rendered. She further testified that patients who paid by cash were not charged for missed appointments, but that it was Dolce's policy to bill Medicaid, Blue Cross and the OBWC for missed and rescheduled appointments.

Melissa Stacy, the former employee of Dolce who originally notified the police of Dolce's questionable billing practices, testified that she worked for Dolce from July 1988 until September 1989, and that she too helped with the billings. She stated that Dolce had instructed her to bill when patients failed to show, and that Dolce always reviewed and signed the claim forms before sending them to Medicaid, Blue Cross or the OBWC.

Robert Lewis, the Chief of the Bureau of Claim Services for the Ohio Department of Human Services ("ODHS"), testified that there is no way to tell from the claim form whether a service was actually rendered but that a provider's signature certifies that everything on the claim is true. Lewis further stated that ODHS does not pay for services not rendered. Sue Parcell of Blue Cross similarly stated that a missed appointment is not a covered procedure under Dolce's provider agreement with Blue Cross.

Paul Thompson, a special agent for the Attorney General's Office of Medicaid Fraud Control, was assigned to the case to analyze the records taken from Dolce's office and determine specific instances in which claims were submitted to Medicaid when services were not rendered. Thompson testified that he reviewed patient files looking for instances where patients missed, cancelled or rescheduled an appointment. Thompson also looked for instances where "FSA" (*i.e.,* full spinal adjustment) was entered followed by a ">." He then reviewed the claim forms to determine if claims were submitted for payment. Finally, Thompson reviewed copies of Medicaid payment checks to determine if Medicaid had in fact paid for services. In addition, Thompson reviewed the appointment books to determine if a patient had come in later. In all, Thompson found three hundred thirty-eight instances in which Dolce billed Medicaid for services that were not rendered and that, as a result, Dolce received $5,224.17 for services that were never provided.

Christopher Ferrara, a financial investigator for Blue Cross, also reviewed the documents seized and testified at the trial below. He too compared the records and determined that Dolce had billed Blue Cross for services not rendered. He testified that Blue Cross had paid Dolce $562 for services that were never provided.

In addition to the above witnesses, several former patients of Dolce testified. They all stated that no one at Dolce's office had ever told them about the office policy to charge for missed, cancelled or rescheduled appointments when the patient failed to give twenty-four hours' notice. They were also able to identify instances when they were not at the office. These instances coincided with the testimony of Thompson and Ferrara and the documentary evidence indicating that Dolce charged for services not rendered.

In his own defense, Dolce testified that he never checked the claim forms for accuracy but he believed all of the patients at issue did receive the services for which Medicaid, Blue Cross and the OBWC were billed. Lori Michalik too stated that despite the office policy of billing for missed appointments, it was her belief that the majority of patients who missed an appointment showed up either later in the day or at a different office.

At the close of the state's case and at the conclusion of all of the evidence, Dolce moved for acquittal pursuant to Crim.R. 29. The court denied the motions and submitted the case to the jury. Upon review of the evidence, the jury found Dolce guilty of insurance fraud in the amount of $300 or more but less than $5,000, guilty of Medicaid fraud in the amount of $5,000 or more, and not guilty of theft. After the judgment, Dolce renewed his motion for acquittal and filed a motion for a new trial, which the trial court denied. The state then filed a motion for costs of the investigation and prosecution pursuant to R.C. 2913.40(F). On

July 1, 1992, the trial court entered judgment, ordering Dolce to pay the Attorney General's Office $21,242.70 and Blue Cross $6,141.55 for costs of the investigation and prosecution. In addition, the court filed a judgment entry of sentence ordering Dolce to serve one and one-half years' incarceration for the Medicaid fraud conviction and one year for the insurance fraud conviction, the sentences to run concurrently. Dolce filed separate appeals from his judgment of sentence and from the order to pay costs, which appeals were subsequently consolidated.

■ We will first address appellant's fourth assignment of error which challenges the trial court's ruling on his motion to suppress. Dolce contends that the trial court erred in denying his motion to suppress because the officers who seized his documents failed to make and file a detailed inventory of the records seized. Thereafter, appointment books, critical to his defense that patients who missed appointments came in at another time or to a different office, could not be accounted for. Dolce claims that all of the appointment books were in the bottom drawer of a file cabinet in his Norwalk office and were therefore seized during the execution of the search warrant but were subsequently lost or misplaced. In opposition, the state claims that the inventory taken complied with Crim.R. 41(D) and that at the hearing on the motion to suppress, appellant examined six witnesses and was not able to establish that the books in question were in the office on the day the search warrant was executed, nor was he able to establish that the police actually seized the books.

Crim.R. 41(D) provides in relevant part:

"The officer taking property under the warrant shall give to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken, or shall leave the copy and receipt at the place from which the property was taken. The return shall be made promptly and shall be accompanied by a written inventory of any property taken."

Furthermore, "evidence seized pursuant to a lawful search is not subject to exclusion merely because of an irregularity in connection with the identification and preservation of that evidence under Crim.R. 41." *State v. Ulrich* (1987), 41 Ohio App.3d 384, 387, 536 N.E.2d 17, 19. Rather, unless a defendant can establish that he was prejudiced by the violation of Crim.R. 41(D), the admission of evidence which was not gathered in strict compliance with the rule will not be in error.

■ At the hearing on the motion to suppress, the court heard testimony from six witnesses, which testimony revealed the following. Upon the search of Dolce's office, home, car, and his parents' home, all documents that may have been relevant to the investigation were seized. This included any and all appointment books that could be found. Although a detailed inventory of every

piece of paper seized was not taken, a substantial inventory of items seized was taken. In addition, after being seized, the documents were secured in a locked storage facility and then transferred to a locked basement room in the Norwalk Municipal Building. Persons reviewing the documents were required to sign in on a log book and were constantly under surveillance. Accordingly, opportunities to remove documents from the secured room were nonexistent.

Given this evidence, the court determined that the inventory taken complied with Crim.R. 41(D) and that all items seized were accounted for. The court thus denied the motion. "At a suppression hearing, the evaluation of evidence and the credibility of witnesses are issues for the trier of fact." *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972, 982, certiorari denied (1992), 505 U.S. ——, 112 S.Ct. 3048, 120 L.Ed.2d 915. Upon a review of the testimony, we conclude that the court did not abuse its discretion in finding that the inventory complied with Crim.R. 41(D). In addition, we find that the trial court's conclusion that all items seized were accounted for, was supported by competent, credible evidence. Accordingly, the fourth assignment of error is not well taken.

In his second assignment of error, Dolce asserts that he was erroneously convicted of insurance fraud in that the bulk of the evidence presented on that charge involved conduct which occurred prior to the enactment of the insurance fraud statute, R.C. 2913.47. More specifically, Dolce contends that applying R.C. 2913.47 to conduct prior to July 18, 1990, violates the *Ex Post Facto* Clause of the United States Constitution and the provision against retroactive laws in the Ohio Constitution. The state, however, contends that because the conduct for which Dolce was convicted violated former R.C. 3999.22 and because the penalty remained the same, Dolce's conviction for insurance fraud was not constitutionally prohibited.

Section 10, Article I of the United States Constitution prohibits the state from passing any *ex post facto* laws. *Ex post facto* laws "are defined as those criminal statutes that make punishable what was innocent at the time committed, or make a crime more serious than it was when committed, or inflict a punishment greater than when committed, or eliminate a defense available when committed." *State v. Smith* (1984), 16 Ohio App.3d 114, 116, 16 OBR 121, 123, 474 N.E.2d 685, 688, at fn. 4.

Similarly, Section 28, Article II of the Ohio Constitution states that the General Assembly shall have no power to pass retroactive laws. In this light, R.C. 1.48 provides that "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." Accordingly, where a statute is not expressly made retrospective it may operate prospectively only. *Warren Cty. Bd. of Commrs. v. Lebanon* (1989), 43 Ohio St.3d 188, 190, 540 N.E.2d 242, 244.

In 1990, the General Assembly passed H.B. No. 347, which modified R.C. 3999.22 and enacted R.C. 2913.47(B)(1). Previously, R.C. 3999.22 provided in relevant part:

"(A) No person shall knowingly make or present, or cause to be made or presented, to a health care insurer any of the following:

"(1) A claim for payment of a health care benefit for any goods or services that the person knows were not received;

"(2) A claim for payment of health care benefits that knowingly misrepresents the patient's diagnoses as a part of a scheme or design to defraud;

"(3) A statement concerning, or a representation of, a material fact used for the determination of health care benefits or payments that the person knows is false or deceptive."

H.B. No. 347 removed this provision from R.C. 3999.22 and in its stead enacted R.C. 2913.47, which became effective on July 18, 1990, and provided in pertinent part:

"(B) No person, with purpose to defraud or knowing that he is facilitating a fraud, shall do either of the following:

"(1) Present to, or cause to be presented to, an insurer any written or oral statement that is part of, or in support of, an application for insurance, a claim for payment pursuant to a policy, or a claim for any other benefit pursuant to a policy, knowing that the statement, or any part of the statement, is false or deceptive;

"(2) Assist, aid, abet, solicit, procure, or conspire with another to prepare or make any written or oral statement that is intended to be presented to an insurer as part of, or in support of, an application for insurance, a claim for payment pursuant to a policy, or a claim for any other benefit pursuant to a policy, knowing that the statement, or any part of the statement, is false or deceptive."

Comparing these two statutes, it is clear that R.C. 2913.47 does not make punishable what was lawful at the time .committed. The penalty provision applicable to the former R.C. 3999.22, however, provides in relevant part:

"(A) Whoever violates division (A) or (B) of section 3999.22 of the Revised Code is guilty of:

"* * * *

"(3) A felony of the fourth degree, if the cumulative amount of claims for health care benefits involved in one or more violations, which violations involve one or more persons covered by a health insurer or insurers and occur within a

period of ninety consecutive days commencing on the date of the first violation, is three hundred dollars or more[.]" R.C. 3999.25.

The penalty provision of R.C. 2913.47 simply provides that if the amount of the false or deceptive claim is more than $300, but less than $5,000, the crime is a fourth degree felony. Accordingly, the new statute eliminated the defense, for those convicted of cumulative false claims, that the total amount involved over a ninety-consecutive-day period did not exceed $300. Because the new statute eliminated a defense available to Dolce under the former statute, applying R.C. 2913.47 to conduct prior to July 18, 1990, violated the *Ex Post Facto* Clause of the United States Constitution.

As stated *supra*, where a statute is not expressly made retrospective, it may operate prospectively only. *Warren Cty. Bd. of Commrs. v. Lebanon, supra*, 43 Ohio St.3d at 190, 540 N.E.2d at 244. More specifically, the Supreme Court of Ohio has held:

"The issue of whether a statute may constitutionally be applied retrospectively does not arise unless there has been a prior determination that the General Assembly specified that the statute so apply. Upon its face, R.C. 1.48 establishes a threshold analysis which must be utilized prior to inquiry under Section 28, Article II of the Ohio Constitution." *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph one of the syllabus.

Because R.C. 2913.47 was not expressly made retrospective, it cannot constitutionally be applied to activity prior to July 18, 1990.

Appellant was convicted of insurance fraud in violation of R.C. 2913.47 for submitting false claims from January 1, 1988 to December 31, 1990. Given our analysis above, any false claims submitted prior to July 18, 1990, cannot form the basis of the insurance fraud conviction. However, the jurors only concluded that Dolce had submitted false insurance claims in excess of $300. They did not specify an exact amount. Upon a review of the record, we conclude that there is evidence that could support a finding that Dolce submitted thirty-five false claims prior to July 18, 1990, totaling $1,219.60, and nine false claims after July 18, 1990, totaling $358.80. Because there is no way of knowing which insurance claims the jurors determined were false, we must reverse appellant's insurance fraud conviction *in toto*.

Accordingly, appellant's second assignment of error is well taken.

In his fifth assignment of error, Dolce argues that the trial court erred in ordering him to produce documents containing Lori Michalik's analysis of the state's findings. Dolce contends that the court erroneously determined that the

notes were discoverable under Crim.R. 16 and that the notes were attorney work product which were not subject to disclosure.

During the course of the trial below, Lori Michalik was called as a witness for both the state and Dolce. During her testimony, it became evident that she had conducted an audit on behalf of Dolce of the records seized from Dolce's office. The purpose of the audit was to determine the accuracy of the state's allegations. During the course of her audit, she generated approximately one thousand pages of notes which she turned over to Dolce's counsel. At the trial below, Michalik was originally called as a witness for the state. Upon Dolce's counsel's cross-examination of her, however, she referred to and discussed her audit. Subsequently, the state requested and was granted permission to treat Michalik as a hostile witness. Thereafter, all of the state's questioning of Michalik was upon cross-examination. Then, upon the state's motion, the court ordered Dolce's counsel to provide the state with a copy of the audit that formed the basis of Michalik's testimony. In particular, the court ordered that the state was entitled to discovery of Michalik's audit under Crim.R. 16.

■ We first note that "the allowance or overruling of various discovery motions in a criminal case rests within the sound discretion of the trial court, and only in cases of clear abuse will that discretion be disturbed upon review." *State v. Laskey* (1970), 21 Ohio St.2d 187, 192, 50 O.O.2d 432, 434, 257 N.E.2d 65, 68, judgment vacated in part (1972), 408 U.S. 936, 92 S.Ct. 2861, 33 L.Ed.2d 753. Accordingly, only when a trial court's ruling on a discovery motion is unreasonable, arbitrary, or unconscionable will we reverse that ruling. *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301, 1308.

Crim.R. 16(C)(1) addresses information that is known to the defendant and subject to disclosure. Crim.R. 16(C)(1)(b) provides:

"*Reports of Examinations and Tests.* If on request or motion the defendant obtains discovery under subsection (B)(1)(d), the court shall, upon motion of the prosecuting attorney, order the defendant to permit the prosecuting attorney to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, available to or within the possession or control of the defendant, and which the defendant intends to introduce in evidence at the trial, or which were prepared by a witness whom the defendant intends to call at the trial, when such results or reports relate to his testimony."

The state contends that Michalik's review was discoverable under Crim.R. 16(C)(1)(b) because it was the result or report of her physical examination of the evidence, was prepared by her and related to her testimony. The audit, however, was conducted at the request of Dolce's counsel. In addition, the audit did not

generate an actual report but rather resulted in numerous notes taken by Michalik when reviewing the office records and then given to Dolce's counsel. Crim.R. 16(C)(2) provides:

*"Information Not Subject to Disclosure.* Except as provided in subsections (C)(1)(b) and (d), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal documents made by the defense attorney or his agents in connection with the investigation or defense of the case, or of statements made by witnesses or prospective witnesses to the defense attorney or his agents."

Although the parties call the inspection an audit, it is clear from the testimony that Michalik simply reviewed the documents at the request of Dolce's counsel and submitted to him her notes from the examination of those records. The Supreme Court of Ohio has stated that "[u]nder Crim.R. 16(C)(2), a tape recording of statements made by witnesses or prospective witnesses to the defense attorney or his agents is not discoverable." *State v. Lockett* (1976), 49 Ohio St.2d 71, 3 O.O.3d 41, 358 N.E.2d 1077, syllabus. Statements made to defense counsel by a witness do not lose their protection from disclosure simply by being written down on paper. We therefore find that the notes were not discoverable and the trial court erred in ordering Dolce's counsel to disclose to the state Michalik's notes.

Upon appellate review, however, error must also be prejudicial to the appellant to be reversible. Both Evid.R. 103(A) and Crim.R. 52(A) provide that error is harmless unless the substantial rights of a defendant have been affected. The test for harmless nonconstitutional error is whether "there is substantial evidence to support the guilty verdict even after the tainted evidence is cast aside * * *." *State v. Cowans* (1967), 10 Ohio St.2d 96, 104, 39 O.O.2d 97, 102, 227 N.E.2d 201, 207. The test for harmless constitutional error is whether " 'beyond a reasonable doubt' * * * the remaining evidence alone comprises 'overwhelming' proof of defendant's guilt." *State v. Williams* (1983), 6 Ohio St.3d 281, 290, 6 OBR 345, 352, 452 N.E.2d 1323, 1333, certiorari denied (1983), 464 U.S. 1020, 104 S.Ct. 554, 78 L.Ed.2d 727, quoting *Harrington v. California* (1969), 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284. However, as stated in *State v. Davis* (1975), 44 Ohio App.2d 335, 348, 73 O.O.2d 395, 402, 338 N.E.2d 793, 803, nonconstitutional error may rise to the level of constitutional error if such error amounts to "a violation of the appellant's right to a fair trial as that term is understood under the due process clause of the fourteenth amendment."

In the present case, we conclude that the court's order to disclose Michalik's notes to the state amounts to harmless error under either the test for constitutional or nonconstitutional error. As is clear from Michalik's testimony,

the notes did not raise any substantial challenge to the state's case. In particular, Michalik was unable to establish in her review of the documents that patients did come in later or came to a different office, but rather relied on her own memory to support her assertion that patients came in later or to a different office. Furthermore, even if the state had not been granted access to the notes, it still could have questioned Michalik about her review of the documents and received the same answers.

Appellant further contends that the notes were his counsel's work product and that the court committed prejudicial, reversible error in ordering the notes to be produced to the state. We conclude, however, that the notes do not constitute work product but were merely a review of the records that were admitted into evidence in the trial below. The review clearly assisted counsel's understanding of the records and facilitated Michalik's testimony. It is noteworthy, however, that no proffer of the audit or review was made to enable this court to reach any other conclusion. Accordingly, we find no prejudicial error in the lower court's order of discovery, and the fifth assignment of error is not well taken.

Dolce's third and sixth assignments of error challenge a number of evidentiary rulings made by the court during the trial below. In addressing these assignments of error, we are guided by the well-established standard of appellate review of evidentiary rulings:

"A trial court has broad discretion in determining whether to admit or exclude evidence. Absent an abuse of discretion that materially prejudices a party, the trial court's decision will stand." *Krischbaum v. Dillon* (1991), 58 Ohio St.3d 58, 66, 567 N.E.2d 1291, 1298–1299.

Under his third assignment of error, Dolce contends that the court erred in admitting evidence of an Ohio Administrative Code regulation which the state then used to embellish the criminal statute. In particular, Dolce argues that the court allowed the state to use Ohio Adm.Code 5101:3–1–60 to establish Dolce's violation of R.C. 2913.40 (Medicaid fraud). Ohio Adm.Code 5101:3–1–60 provides that Medicaid reimburses only for services actually needed and received. During the direct examination of Robert Lewis, the Chief of the Bureau of Claim Services for the ODHS, Lewis stated that the ODHS does not reimburse for services not rendered. The prosecutor then asked, over the objection of defense counsel, if that policy was in the Ohio Administrative Code, to which Lewis responded that it was and cited Ohio Adm.Code 5101:3–1–60. Although the prosecutor showed Lewis a copy of this regulation, at no time was the regulation admitted into evidence or seen by the jury. The only Ohio Administrative Code regulation admitted into evidence was Ohio Adm.Code 4123–7–04, which deals with workers' compensation claims. Dolce was not convicted of the theft charge to which the workers' compensation evidence related. Additionally, Lewis'

referral to Ohio Adm.Code 5101:3–1–60 supported only his statement that the ODHS does not reimburse for services not rendered. Finally, the court did not submit any question to the jury relating to Ohio Adm.Code 5101:3–1–60, but rather instructed the jury on the elements of the crimes charged. Accordingly, we see no prejudicial error in the court's allowance of questioning relative to the Ohio Administrative Code and the third assignment of error is not well taken.

In his sixth assignment of error, Dolce raises five specific evidentiary rulings made by the trial court which he contends amounted to prejudicial error.

Dolce first asserts that the court erroneously admitted all of the patient files. Dolce contends that the files lacked any foundation or relevance to the issue of whether he billed for services not rendered. The record reveals that a proper foundation was laid for the patient files by the state through its questioning of Jody Mayer, a former employee of Dolce. Mayer testified that the files were Dolce's patient files and that she had used the information on them in preparing billings. She further stated that she billed for missed appointments based on information in the files and that she submitted all claim forms to Dolce for his review prior to mailing in the claim forms. Given this testimony, the patient files were clearly relevant to the issues before the court. Furthermore, a proper foundation was laid.

Dolce next argues that the trial court unduly restricted his cross-examination of state's witnesses. He cites three instances in support. In each of these instances, however, the information sought by Dolce's counsel was revealed in some other way or at a different time during the trial. Therefore, any prejudice caused by the court's restricting cross-examination was harmless.

Dolce further contends that the court prohibited him from making a proffer for the record. During the instance cited, appellant's counsel was questioning Lori Michalik about the number of times Dolce's and other employees' handwriting appeared in the patient charts. The court would not allow counsel to question Michalik as to how many times employees Jody Mayer's and Melissa Stacy's handwriting appeared because they did not work for Dolce at the same time. Counsel then stated that he wanted to make a proffer but he did not pursue such course of action, which he had an absolute right to do. We do not see how that evidence would have been relevant to the determination of any issues in this case, particularly given that further evidence indicated the frequency of Dolce's handwriting in the charts, which issue was a crucial matter in this case.

Fourth, appellant argues that the court erred in allowing the state to cross-examine its own witness without a showing of affirmative damage or surprise. At the trial below, during appellant's cross-examination of Michalik, the state requested that she be treated as a hostile witness. The court granted

the request. Evid.R. 611(C) provides that "[w]hen a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions." Michalik had a four-and-a-half-year relationship with Dolce and had originally been indicted along with Dolce. Only when she agreed to testify against him were the charges against her dropped. In addition, she had reviewed the seized documents for Dolce in an attempt to help him build a defense. Given these circumstances, the court did not abuse its discretion in granting the state's request. Appellant has confused Evid.R. 611(C) with Evid.R. 607, which addresses who may impeach and allows a party to impeach its own witness only upon a showing of surprise and affirmative damage. The state did not attempt to impeach Michalik, but simply wanted the opportunity to ask her leading questions upon redirect examination. Therefore, the court did not err in granting the state's request to treat Michalik as a hostile witness.

■ Finally, appellant asserts that the court erred in allowing the state to cross-examine Dr. Thomas Andosca, a chiropractor and one of Dolce's witnesses, on the issue of billing. Appellant contends that this allowance permitted the state to turn a fact witness into an expert witness on billing. During its cross-examination of Andosca, the state asked Andosca if he was familiar with billing claims for workers' compensation and Blue Cross, to which Andosca answered that he was. He further testified that he does not bill for missed appointments because they are not covered by workers' compensation or Blue Cross. Appellant objected on the grounds of relevancy. While arguably another chiropractor's billing practices were not relevant to the issues of whether Dolce is guilty of Medicaid fraud, insurance fraud and theft, we find the court's error, if any, in allowing this testimony to be harmless in that the state presented other substantial evidence to support the guilty verdict beyond a reasonable doubt.

The sixth assignment of error is therefore not well taken.

■ In his first assignment of error, appellant contends that the court erred in denying his Crim.R. 29 motion for acquittal because there was insufficient evidence from which a jury could conclude that all the elements of the crimes charged had been proven beyond a reasonable doubt. Because we have already reversed the insurance fraud conviction, we will only address this assignment of error as it relates to the Medicaid fraud conviction.

"In reviewing a ruling on Crim.R. 29(A), this court construes the evidence in a light most favorable to the government. An entry denying the motion is proper if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Wolfe* (1988), 51 Ohio App.3d 215, 216, 555 N.E.2d 689, 690.

In construing the evidence that was before the trial court, we are mindful that:

"Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof. When the state relies on circumstantial evidence to prove an essential element of the offense charged, there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph one of the syllabus.

Medicaid fraud is proscribed by R.C. 2913.40, which provides in relevant part:

"(B) No person shall knowingly make or cause to be made a false or misleading statement or representation for use in obtaining reimbursement from the medical assistance program."

Upon a careful review of the evidence presented in the court below, we conclude that reasonable minds could reach different conclusions as to whether each material element of the crime of Medicaid fraud was proved beyond a reasonable doubt. Accordingly, the first assignment of error is not well taken.

In the seventh and final assignment of error, appellant contends that the trial court erred in imposing upon him the costs of investigation in the insurance fraud case. In addition, appellant asserts that the court failed to afford him any due process rights before imposing upon him the costs of investigation and prosecution of both the insurance fraud and Medicaid fraud cases.

R.C. 2913.40, the Medicaid fraud statute, states under subsection (F):

"Upon application of the governmental agency, office, or other entity that conducted the investigation and prosecution in a case under this section, the court shall order any person, who is convicted of a violation of this section for receiving any reimbursement for furnishing goods or services under the medical assistance program to which he is not entitled, to pay to the applicant its cost of investigating and prosecuting the case. The costs of investigation and prosecution that a defendant is ordered to pay pursuant to this division shall be in addition to any other penalties for the receipt of that reimbursement that are provided in this section, section 5111.03 of the Revised Code, or any other provision of law."

■ As we have found appellant's conviction for insurance fraud to be unconstitutional, any charge against him for the costs of the insurance fraud investigation must also be reversed. Assuming *arguendo* that his conviction was proper, however, to receive reimbursement under this provision, the statute clearly requires a governmental agency, office or other entity that conducted an investigation into Medicaid fraud allegations to file an application. Blue Cross did not conduct an investigation into Medicaid fraud allegations nor did it file an application for reimbursement. Furthermore, there is no comparable provision in the insurance fraud statute. The lower court, however, granted Blue Cross its

costs pursuant to R.C. 2913.40(F). We find this application of R.C. 2913.40(F) to be erroneous.

As to the Medicaid fraud investigation, however, R.C. 2913.40(F) does not require that the court hold a hearing on the proper amount to be reimbursed. Rather, the statute says upon application by the governmental agency, the court *shall* order reimbursement. Nevertheless, it is well established that implicit in the principle of restitution "is that the amount claimed must be established to a reasonable degree of certainty before restitution can be ordered." *State v. Williams* (1986), 34 Ohio App.3d 33, 34, 516 N.E.2d 1270–1271. In this light, the state submitted affidavits of the investigators and attorneys who investigated and prosecuted this case. Thereafter, on July 1, 1992, the court held a hearing on the issue of costs. Appellant had full notice of and did appear with counsel at this hearing. He knew that the affidavits had been submitted to the court but did not subpoena the affiants for questioning. Therefore, he had an opportunity to be heard on the issue of costs and chose not to exercise that right. Accordingly, his due process rights were not violated.

The seventh assignment of error is therefore well taken, in part.

On consideration whereof, the judgment of the Huron County Court of Common Pleas is reversed as to the insurance fraud conviction and as to the award of costs relating to the insurance fraud conviction, and is affirmed in all other respects. Costs of this appeal to appellee.

*Judgment accordingly.*

GLASSER, P.J., and MELVIN L. RESNICK, J., concur.

SHERCK, J., concurs in part and dissents in part.

SHERCK, Judge.

I concur in part and dissent in part.

I concur in the majority opinion except for the handling of appellant's fifth assignment of error, which deals with the trial court's order requiring appellant's attorney to turn over to the prosecution the notes taken by Michalik in her review of appellant's records. These notes were made at the request of appellant's attorney. These notes were in the file of appellant's attorney. These notes were intermingled with notes made by appellant's attorney on the same documents.

The majority, while acknowledging that the trial court erred in ordering disclosure of the notes, concludes that such error was harmless. I disagree.

The standard propounded by the majority asks whether the "remaining evidence" constitutes overwhelming proof of guilt. I would find this standard appropriate only where the nature of the error was the improper admission of evidence. Where the error consists of improperly compelling defense counsel to deliver investigative notes to the prosecution, it is illogical to examine the persuasive force of the "remaining evidence" because the harm arises not from the presentation of evidence, but from the disclosure of information. The harm in improperly ordering disclosure is that knowledge, unlike evidence, cannot be excluded. Once knowledge is obtained, the damage is done.

I would find, first, that the error in this case is an error of constitutional dimensions. The right to effective assistance of counsel is a constitutional right. Effective assistance includes both investigation and loyalty. *State v. Johnson* (1986), 24 Ohio St.3d 87, 90, 24 OBR 282, 284, 494 N.E.2d 1061, 1063 (investigation); *Glasser v. United States* (1942), 315 U.S. 60, 70, 62 S.Ct. 457, 464, 86 L.Ed. 680 (loyalty). Thus, the attorney has the duty to investigate, and the client has the right to insist that the investigation not be improperly used to aid in the conviction. Furthermore, the practical effect of improperly ordering disclosure of information is little different from the effect of a government agent intruding on the attorney-client relationship. The United States Supreme Court found that government intrusion into the attorney-client relationship affects the constitutional right to counsel. *United States v. Morrison* (1981), 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564. I would find that an error which allows defense-generated investigative notes to be used to the detriment of the client is a constitutional error.

When the error is of constitutional dimensions, then reversal is mandatory unless this court is convinced beyond a reasonable doubt that the outcome would have been the same but for the error. *Chapman v. California* (1967), 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705. Where the error consists of compelling disclosure of information, then the state should bear the heavy burden of persuading this court that the information was inconsequential and did not contribute in any way to the state's ability to obtain a conviction. In this case, we cannot know what strategic advantage was gained by having access to the investigative notes. I would therefore find that the trial court erred and that the error was not harmless beyond a reasonable doubt. I would reverse and remand to allow the trial court to fashion an appropriate remedy to avoid contamination of a second trial by determining what specifically was disclosed and by ensuring that the disclosed information is not used by the state.