[Cite as *State v. Poling*, 2011-Ohio-3201.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Julie A. Edwards, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2009-CA-00264 |
| GREGORY YULE POLING | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING: Criminal appeal from the Stark County Court of Common Pleas, Case No. 2009-CR-1100

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: June 27, 2011

APPEARANCES:

For Plaintiff-Appellee

JOHN D. FERRERO
STARK COUNTY PROSECUTOR
110 Central Plaza S., Ste. 510
Canton, OH 44702

For Defendant-Appellant

KATHERINE A. SZUDY
Asst. Public Defender
250 E. Broad St., Ste. 1400
Columbus, OH 43215

*Gwin, P.J.*

**{¶1}** In this re-opened appeal, defendant-appellant Gregory Poling appeals his conviction and sentence in the Stark County Court of Common Pleas for failing to notify the sheriff of a change of address in violation of R.C. 2950.05(A), a felony of the first degree in light of the Ohio Supreme Court's decision in *State v. Bodyke,* 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE CASE AND FACTS

**{¶2}** On December 4, 2006, in the Portage County Court of Common Pleas, appellant pleaded guilty to one count of rape. *State v. Poling,* Stark App. No. 2009-CA-00264, 2010-Ohio-3108, at ¶3. [Hereinafter cited as "*Poling I*"]. The Portage County Court of Common Pleas sentenced appellant to a three-year prison term. Furthermore, the trial court classified appellant as a sexually oriented offender under Megan's Law, the sex offender statute in place at the time of his conviction. [Former R.C. 2950.07(B)(3) (repealed January 1, 2008)].

**{¶3}** Appellant was advised of his duties to register as an offender of a sexually oriented offense. Those duties included registering any change of address with the sheriff of the county where he resided after his prison term at least twenty days prior to changing his address. Appellant was ordered to verify his current residence address annually for a period of ten years. Appellant signed the form acknowledging that he understood the requirements. [*State v. Poling,* Judgment Entry and Notice of Duties to Register as an Offender of a Sexually Oriented or Child-Victim Offense, Dec. 4, 2006, Portage County Court of Common Pleas, Case No. 2004CR0051].

**{¶4}** The General Assembly enacted Senate Bill 10, which amended numerous sections of Ohio's Revised Code, including, inter alia, R.C. Chapter 2950, which contains the sexual offender classification system in Ohio. Senate Bill 10 modified R.C. Chapter 2950 so that it would be in conformity with the federal legislation, the Adam Walsh Act. Such modification was accomplished by amending certain statutes, repealing others, renumbering a few sections, and adding new sections. The result is that a large portion of the chapter changed. Those changes, however, did not all become effective on the same date. Portions of Senate Bill 10 became effective on July 1, 2007, while other portions did not become effective until January 1, 2008. See, *State v. Gooding,* Coshocton App. No. 08 CA 5, 2008-Ohio-5954 at ¶ 8.

**{¶5}** The changes made to R.C. Chapter 2950 by Senate Bill 10 altered the sexual offender classification system. Under pre-Senate Bill 10, depending on the crime committed and the findings by the trial court at the sexual classification hearing, an offender who committed a sexually oriented offense that was not registry exempt could be labeled a sexually oriented offender, a habitual sex offender, or a sexual predator. Each classification required registration and notification requirements. For instance, for a sexually oriented offender, the registration requirement was once annually for 10 years and there was no community notification requirement; for a habitual sex offender the registration requirement was for every 180 days for 20 years and the community notification could occur every 180 days for 20 years; and for a sexual predator, the registration duty was every 90 days for life and the community notification could occur every 90 days for life. *Gooding,* supra at ¶ 10.

**{¶6}** Under Senate Bill 10, those labels are no longer used and the registration requirements are longer in duration. An offender who commits a sexually oriented offense is found to be either a "sex offender" or a "child-victim offender". Depending on what crime the offender committed, they are placed in Tier I, Tier II or Tier III. The tiers dictate what the registration and notification requirements are. Tier I is the lowest tier. It requires registration once annually for 15 years, but there are no community notification requirements. Tier II requires registration every 180 days for 25 years, but it also has no community notification requirements. Tier III, the highest tier and similar to the old sexual predator finding, requires registration every 90 days for life and the community notification may occur every 90 days for life. *Gooding,* supra at ¶ 11.

**{¶7}** In accordance with R.C. 2950.032, appellant was reclassified as a Tier III sex offender. [*Poling I*]. As a sexually oriented offender under former law, appellant was required to register with the Sheriff's Office once annually for ten years. [Former Ohio Rev. Code Ann. R.C. 2950.07(B)(3) (repealed January 1, 2008)]. But as a "Tier III" offender under Senate Bill 10, appellant was required to register every 90 days for the rest of his life. R.C. 2950.07(B)(1).

**{¶8}** Appellant completed his three-year prison term on January 27, 2009. [*Poling I* at ¶3]. Appellant's parole officer, Vicki Knapp, testified that she became his parole officer when he relocated to Stark County. Knapp testified that appellant was classified as a Tier III sex offender based on his rape conviction, which required him to register his address with the sheriff of the county in which he resides every 90 days. As part of appellant's registration requirements, he was required to provide, in writing,

a "notice to move" to the sheriff at least 20 days prior to moving into any new residence. [*Poling I* at ¶4].

{¶9} Knapp testified that overall, appellant was compliant with his rules of parole. However, in May, 2009, appellant notified Knapp that he had secured a residence at 1034 Mahoning Avenue, in Canton, and that he intended to move there in June, 2009. Knapp visited the site and approved it as an appropriate place for appellant to move to. She testified that she reminded appellant that he needed to inform the Stark County Sheriff's Department of his change of address prior to moving. According to Knapp, she witnessed appellant calling the Sheriff's office to schedule an appointment to change his address. Appellant's appointment with the Sheriff's office was scheduled for June 2, 2009, at 4:00 p.m. However, according to Stark County Deputy, George Macris, appellant failed to appear for the appointment. [*Poling I* at ¶5].

{¶10} Appellant did move into the residence at 1034 Mahoning, but only resided there for approximately one and a half months before he was asked to vacate the residence due to drug use of some other residents of the home. Appellant then returned to the Refuge of Hope shelter sometime between July 12, 2009, and July 15, 2009, where he resided until he was arrested on July 16, 2009. [*Poling I* at ¶6].

{¶11} Upon returning to the shelter, appellant informed Knapp that he had moved out of the residence on Mahoning back to the shelter. At that time, Knapp telephoned the Sheriff's department and spoke with Deputy Macris, who informed Knapp that appellant had never registered his Mahoning Avenue address in writing. The Sheriff's Department asked Knapp to take appellant into custody because he had

violated the registration provisions of his sex offender classification duties. [*Poling I* at ¶7].

**{¶12}** Appellant was transported to the Stark County Sheriff's Department and was read his Miranda rights. He waived his rights and spoke with Deputy John VonSpiegel. Appellant admitted to living on Mahoning Avenue from June 2, 2009, to July 12, 2009. He refused to answer the question as to why he did not register his address with the Sheriff's department. [*Poling I* at ¶8].

**{¶13}** After the trial, the jury found appellant guilty as charged. The trial court sentenced appellant to ten years in prison. [*Poling I* at ¶9]. Appellant timely appealed, and this court affirmed appellant's conviction. [*Poling I*, supra].

**{¶14}** On September 27, 2010, appellant filed a timely application to reopen his direct appeal. This Court granted appellant's application in light of the Ohio Supreme Court's June 3, 2010 decision in *State v. Bodyke,* 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753[1]. In *Bodyke,* the Court concluded that R.C. 2950.031 and R.C. 2950.032, which require the attorney general to reclassify sex offenders whose classifications have already been adjudicated by a court and made the subject of a final order, violated the separation of powers doctrine by requiring the opening of a final judgment. The *Bodyke* Court concluded that R.C. 2950.031 and R.C. 2950.032 "may not be applied to offenders previously adjudicated by judges under Megan's Law, and the classifications and community-notification and registration order imposed previously by judges are reinstated." *Bodyke* at ¶66.

---

[1] Our decision in *Poling I* was filed June 28, 2010. The Supreme Court released the decision in *Bodyke* on June 3, 2010; however that decision was not referenced in *Poling I.* Accordingly, we granted appellant's motion to re-open his direct appeal.

{¶15} In this re-opened appeal, appellant presents the following three assignments of error:

{¶16} "I. THE TRIAL COURT ERRED BY CONVICTING MR. POLING OF VIOLATING THE STATUTES IMPOSING CERTAIN RESTRICTIONS ON HIM AS A TIER III OFFENDER.

{¶17} "II. TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE, IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION, FOR FAILING TO OBJECT TO THE TRIAL COURT'S DECISION TO ENTER A CONVICTION AGAINST MR. POLING FOR VIOLATING THE STATUTES IMPOSING CERTAIN RESTRICTIONS ON HIM AS A TIER III OFFENDER.

{¶18} "III. APPELLATE COUNSEL PROVIDED INEFFECTIVE ASSISTANCE, IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION, FOR FAILING TO ARGUE THAT THE TRIAL COURT'S DECISION TO ENTER A CONVICTION AGAINST MR. POLING FOR VIOLATING THE STATUTES IMPOSING CERTAIN RESTRICTIONS ON HIM AS A TIER III OFFENDER, AND THAT TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE, IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION, FOR FAILING TO OBJECT TO THE TRIAL COURT'S DECISION TO

ENTER A CONVICTION AGAINST MR. POLING FOR VIOLATING THE STATUTES IMPOSING CERTAIN RESTRICTIONS ON HIM AS A TIER III OFFENDER."

I.

{¶19} In his First Assignment of Error, appellant argues that because his reclassification to a Tier III sex offender was unconstitutional pursuant to the Ohio Supreme Court's decision in *State v. Bodyke,* 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, his Tier-III status could not serve as the predicate for the crime of which he was indicted and convicted.

{¶20} In *Bodyke,* the court concluded that R.C. 2950.031 and 2950.032, which provided for reclassification of sex offenders by the Attorney General of Ohio, were unconstitutional because they violated the separation of powers by allowing an executive branch official to change a judicially made designation regarding a defendant's sex offender status. *Bodyke* at ¶ 2. The court concluded that the appropriate remedy was to sever R.C. 2950.031 and 2950.032 and return those defendants who had been reclassified by the attorney general to their previous judicially designated status. Id.

{¶21} The Supreme Court of Ohio has recently made it clear that *Bodyke* not only applied to return pre-Adam Walsh Act offenders to their prior classifications, but also returned those offenders to their pre-Adam Walsh Act reporting requirements. In *State v. Gingell,* —— Ohio St. 3d ——, 2011–Ohio–1481 the court considered a case involving a sex offender convicted for violating a reporting requirement imposed by the Adam Walsh Act that required Tier III offenders to verify their addresses every 90 days. The court considered the application of *Bodyke* to *Gingell's* case and concluded

that "pursuant to *Bodyke, Gingell's* original classification under Megan's Law and the associated community-notification and registration order were reinstated." *Gingell* at ¶ 8.

**{¶22}** Under former law, appellant was required to provide notice of an address change twenty days prior to the change. R.C. 2950.05(A). This requirement did not change with the enactment of Senate Bill 10. Therefore, because appellant had an ongoing duty since his release from prison to notify the sheriff of any change of his registered address, neither Senate Bill 10 nor *Bodyke* changed this requirement or his duty. See *State v. Huffman,* Montgomery App. No. 23610, 2010-Ohio-4755. The evidence in the case at bar was uncontroverted that appellant failed to notify the sheriff of the change of his registered address. *Poling I* at ¶ 20. Thus appellant's conviction for failure to comply with R.C. 2950.05 is affirmed.

**{¶23}** Appellant next argues that in 2006, his violation for failing to register a change of address would have been a third degree felony. However, because his violation occurred in 2009, he was charged and convicted of a first degree felony offense. Appellant claims the Stark County Common Pleas Court had no authority to modify the previous entry of the Portage County Common Pleas Court.

**{¶24}** The Court did not address the penalty provisions for failure to register a change of address in violation of R.C. 2950.05 in either *Bodyke* or *Gingell.*[2]

**{¶25}** Article I of the U.S. Constitution provides that neither Congress nor the states shall pass an "ex post facto Law." *See* U.S. Const. Art. I, § 9, cl. 3; Art. I, § 10, cl. 1. The Ohio Constitution contains a similar provision. See, Ohio Const. Art. 2, § 28. Although the Ex Post Facto Clause limits the legislature instead of the judiciary,

_____

[2] R.C. 2950.99

"limitations on *ex post facto* judicial decision-making are inherent in the notion of due process." *Rogers v. Tennessee* (2001), 532 U.S. 451, 456, 121 S .Ct. 1693. In the context of judicial decision-making, a defendant has "a right to fair warning of that conduct which will give rise to criminal penalties." *Marks v. United States* (1977), 430 U.S. 188, 191, 97 S.Ct. 990. Appellant claims, in essence, that the increase in penalty from a third degree felony in 2006 to a first degree felony in 2008 altered sentencing law in a manner detrimental to him and thereby violated his due process right to fair warning. *United States v. Farris,* supra 448 F.3d at 967.

{¶26} Appellant in the case at bar was subject to criminal prosecution if he failed to report a change of address at the time of his conviction in 2006. Appellant therefore cannot complain of a lack of fair warning that his conduct could be treated as a criminal offense. See *Weaver v. Graham,* 450 U.S. at 28-29, 101 S.Ct. 960, 67 L.Ed.2d 17 (noting that the Ex Post Facto Clause assures that "legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed"). *State v. Walls,* 96 Ohio St .2d 437, 446, 2002-Ohio-5059 at ¶ 27, 775 N.E.2d 829, 840.

{¶27} To violate the Ex Post Facto Clause, the law must be retrospective so that it applies to events occurring before its enactment and it must disadvantage the person affected by altering the definition of criminal conduct or increasing the punishment for the crime." *State v. Glande* (Sept. 2, 1999), Eighth App. No. 73757, citing *Lynce v. Mathis* (1997), 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63; *Weaver v. Graham* (1981), 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17. "The clause prohibits the enactment of any law that criminalizes conduct which was innocent and not

punishable at the time it was committed; or that makes the crime more serious than it was when committed; or that inflicts a greater punishment than that prescribed at the time the crime was committed; or that alters the legal rules of evidence either by requiring less or different evidence in order to convict or by eliminating a defense available when the crime was committed." Id*., citing *Beazell v. Ohio* (1925), 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216; *Calder v. Bull* (1798), 3 Dall. 386, 1 L.Ed. 648; *State v. Dolce* (1993), 92 Ohio App.3d 687, 637 N.E.2d 51.

**{¶28}** In *State vs. Cook* (1998), 83 Ohio St.3d 404, 700 N.E. 2d 570, the Ohio Supreme Court held that R.C. 2950.09(B)(1), as applied to conduct prior to the effective date of the statute, does not violate the retroactivity clause of Section 28, Article 2, of the Ohio Constitution, nor does it violate the Ex Post Facto Clause of Section 10, Article 1, of the United States Constitution. Id. at paragraphs one and two of the syllabus. See also, *State v. Ferguson,* 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110.(The Court found amendments to Sexual Registration and Notification Law (SORN) do not violate provision of the state constitution stating that the legislative branch has no power to enact laws that apply retroactively and amendments were not unconstitutional ex post facto laws).

**{¶29}** In the case at bar, R.C. 2950.99 as amended in 2008 does not punish any action that was formerly not a crime or increase the penalty for a crime already committed. In 2006 appellant was subject to the reporting requirements as a sexually oriented offender for a period of ten years. R.C. 2950.07(B)(3) (repealed January 1, 2008). The pre-existing ten-year reporting period applicable to appellant had not expired when he was charged and convicted of failing to provide notice of an address

change twenty days prior to the change. Appellant had a duty to report a change of address when the statutory amendment to R.C. 2950.99 was enacted. Accordingly, appellant could only be charged with a felony of the first degree if he failed to report an address change after January 1, 2008.

{¶30} We find that the application of amended R.C. 2950.99 does not violate the Ex Post Facto Clause. See *State v. Dycus*, Franklin App. No. 04AP-751, 2005-Ohio-3990 at ¶21. (Citations omitted). As the Ohio Supreme Court observed in *Cook*,

{¶31} "Even prior to the promulgation of the current version of R.C. Chapter 2950, failure to register was a punishable offense. See former R.C. 2950.99, 130 Ohio Laws 671. Thus, any such punishment flows from a failure to register, a new violation of the statute, not from a past sex offense. In other words, the punishment is not applied retroactively for an act that was committed previously, but for a violation of law committed subsequent to the enactment of the law." 83 Ohio St.3d at 420-421, 700 N.E. 2d at 584, 1998-Ohio-291.

{¶32} In the case at bar, appellant was advised of his duty to report a change of address at his sentencing hearing December 4, 2006. The penalty provisions for failure to register a change of address were increased nearly two years later on January 1, 2008. Appellant was charged based upon his conduct in failing to register his address change approximately seventeen months later in June - July 2009. Thus, appellant had fair warning that his conduct could be treated as a criminal offense, and that the penalty would be classified as a felony of the first degree, well-in advance of the conduct which led to his indictment.

**{¶33}** In conclusion, appellant's reclassification has no bearing on the outcome of his prosecution. According to *Bodyke,* appellant's reclassification as a Tier III offender cannot be enforced, and his original classification as a sexually oriented offender will be reinstated. *Id.* at ¶ 66, 933 N.E.2d 753. However, as stated above, appellant was required to register a change of address at least twenty days prior to changing said address even before his reclassification from a sexually oriented offender to a Tier III offender. He failed to do so and was appropriately prosecuted, convicted and sentenced. The penalty enhancement provisions do not punish the past conduct; instead, they merely increase the severity of a penalty imposed for a present violation of the law.

**{¶34}** Appellant's First Assignment of Error is overruled.

## II & III

**{¶35}** In his Second Assignment of Error appellant argues that trial counsel was ineffective for failing to object to an unlawful conviction. In his Third Assignment of Error, appellant claims that his appellate counsel was ineffective for failing to anticipate the *Bodyke* holding of the Ohio Supreme Court.

**{¶36}** A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, 113 S.Ct. 838; *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. In order to warrant a finding that trial counsel was

ineffective, the petitioner must meet *both* the deficient performance and prejudice prongs of *Strickland* and *Bradley. Knowles v. Mirzayance* (2009), --- U.S. ----, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251. We apply the *Strickland* test to all claims of ineffective assistance of counsel, both trial counsel, or appellate counsel. *State v. Turner*, Licking App. No. 2006-CA-123, 2007-Ohio-4583; *State v. Godfrey* (Sept. 2, 1999), Licking App. No. 97CA0155.

**{¶37}** To show deficient performance, appellant must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 688, 104 S.Ct. at 2064. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland v. Washington* 466 U.S. at 687, 104 S.Ct. at 2064. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. *Strickland v. Washington* 466 U.S. at 688, 104 S.Ct. 2052 at 2065.

**{¶38}** Appellant must further demonstrate that he suffered prejudice from his counsel's performance. See *Strickland*, 466 U.S.at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment"). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. To prevail on his ineffective-assistance claim, appellant must

show, therefore, that there is a "reasonable probability" that the trier of fact would not have found him guilty.

**{¶39}** In the case at bar, we cannot say that trial counsel or appellate counsel was ineffective for failing to raise the constitutionality of the reclassification statutes, since the reclassification has no bearing on the outcome of appellant's prosecution. Appellant failed to comply with the notification requirement, and was properly convicted and sentenced for that crime. Appellant's classification as a sexually oriented offender and the duties attached to that classification would be reinstated pursuant to *Bodyke,* and any potential claims about the registration requirements under Senate Bill 10 would be moot. Thus, appellant's substantial rights would not have been affected by counsel's failure to raise the applicability of Senate Bill 10. *State v. Huffman*, Montgomery App. No. 23610, 2010-Ohio-4755 at ¶22; *State v. Stansell*, Montgomery App. No. 23630, 2010-Ohio-5756 at ¶ 39.

**{¶40}** Because we have found no instances of error in this case, we find appellant has not demonstrated that he was prejudiced by trial counsel's performance.

**{¶41}** Appellant's Third and Fourth Assignments of Error are overruled.

{¶42} For the foregoing reasons, the judgment of the Stark County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Edwards, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. JULIE A. EDWARDS

WSG:clw 0602

[Cite as *State v. Poling*, 2011-Ohio-3201.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                                   :
                                                :
        Plaintiff-Appellee              :
                                                :
                                                :
-vs-                                            :          JUDGMENT ENTRY
                                                :
GREGORY YULE POLING                             :
                                                :
                                                :
        Defendant-Appellant             :          CASE NO. 2009-CA-00264

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs to appellant.

 

_____

HON. W. SCOTT GWIN

_____

HON. WILLIAM B. HOFFMAN

_____

HON. JULIE A. EDWARDS