OPINION
{¶ 1} Defendant-appellant Scott Stevenson appeals from his convictions and sentences in the Stark County Court of Common Pleas on one count of rape in violation of R.C. 2907.02 (A)(1)(B), a felony of the first degree and one count of gross sexual imposition in violation R.C. 2907.05
(A)(4), a felony of the third. Plaintiff-appellee is the State of Ohio.
 {¶ 2} In February 2003, Theresa Stevenson and appellant were still married but had separated. They had two children together, Brandi and Brandon. Theresa lived in Canton and appellant lived in Bolivar with his grandmother. Theresa and appellant worked out a mutually agreeable visitation schedule by which appellant's children were with him every other weekend. During these visitations the children stayed with appellant at his grandmother's house in Bolivar.
 {¶ 3} Sometime in late January 2003, this visitation stopped because Brandi, age 6, "threw a fit" when it was time for her to leave for a visitation with appellant. Brandi was hanging on her mother, screaming, crying, and repeating that she wasn't going to go. Theresa did not immediately ask why her daughter was so adamant about not going to see appellant because she had to leave for work. At some point, Brandi told Theresa that appellant was doing things he was not suppose to do to her. According to Theresa she did not ask any questions; she simply telephoned the Child Abuse Hotline and scheduled an appointment to see a social worker.
 {¶ 4} At trial Brandi testified to the details of what had occurred between her and the appellant. She testified that she was in court because of appellant, who she does not visit anymore because he touched her in the wrong places, including her "privates" and her "butt". The touching occurred at grandma's house, where appellant lives, in the bunk bed. Brandi testified that appellant touched her with his "private" on her butt; her pants were pulled down, as were his, and it hurt. Brandi testified that appellant told her if she yelled he would smack her. Brandi further testified that appellant made her suck his "private", which made her feel "nasty". Finally Brandi testified that appellant once "spit" on his "private".
 {¶ 5} C.J. Cross is an employee of the Stark County Department of Jobs and Family Services, and became aware of Theresa Stevenson's hotline call in early February 2003. Ms. Cross' involvement in the investigation included interviews of both appellant and Brandi. During his interview, appellant told Ms. Cross that his children visited every other weekend and that they slept in bunk beds in a spare bedroom during their visits. Ms. Cross testified that appellant stated that he slept in his own bedroom or on the couch. Ms. Cross further testified that appellant told her that he had no concerns about Theresa as mother; he believed that she took good care of the children.
 {¶ 6} Dr. Robin Tener is a psychologist who specializes in treatment of children and adolescence. She met with Theresa and Brandi approximately one month after the allegations were disclosed.
 {¶ 7} Dr. Tener first described her conversation with the mother, from who she gained background information about the family. Ms. Stevenson told Dr. Tener about the separation and visitation arrangements. The mother further said that she did not have any concern about appellant's care of his children and had only recently noticed Brandi's reluctance to be with him. Dr. Tener testified that Theresa Stevenson did not give her much information about the allegations themselves and seemed hesitant to tell Dr. Tener what the allegations were.
 {¶ 8} Dr. Tener next described her conversation with Brandi. Brandi told Dr. Tener that her visits to her father had stopped because he "does things to [her] body in bed." Brandi related the details of the abuse to Dr. Tener telling her that the abuse occurred while Brandi was sleeping in the lower bunk bed with her brother, that appellant attempted penetration, and that she was afraid and crying but appellant threatened her to be quiet or he would spank her. Dr. Tener further testified that Brandi told her that appellant spit "slobber" into his hand and rubbed it onto his penis, then slid his penis on Brandi's "private." Brandi told Dr. Tener that she was particularly upset about appellant tricking her by telling her to suck his thumb and then putting his penis in her mouth instead. Dr. Tener testified that Brandi told her that she was in pain when appellant tried to penetrate her, and that she had disclosed the abuse because she was afraid of being hurt again.
 {¶ 9} Dr. Tener testified that her professional opinion is that Brandi is a victim of child sexual abuse.
 {¶ 10} Nurse practitioner Donna Abbott testified about her physical examination of the child which included viewing the anal and vaginal areas with a colposcope magnifying device. Nurse Abbott was looking for signs of vaginal injury or sexually transmitted diseases, although she did not necessarily expect to make any physical findings based upon Brandi's allegations. Nurse Abbott concluded that there were no physical findings in Brandi's case which was consistent with Brandi's allegations of only oral contact or rubbing.
 {¶ 11} The defense called several of appellant's relatives to testify on his behalf. The testimony of these witnesses described Theresa's failings as a mother, and a four-wheeler accident which allegedly rendered appellant unable to see his kids for some period of time. The defense also called their own expert, Dr. David Lowenstine, who testified that children are very suggestible and that he recommends video taping or audio taping interviews of victims of alleged child sexual abuse.
 {¶ 12} Appellant testified on his own behalf. He claimed to be shocked by the allegations of sexual abuse and denied them. He described Theresa Stevenson as "not very good of a mother" despite the fact that he told social workers otherwise. He also testified concerning the four-wheeler accident stating that it occurred on September 9th and claimed that he only spent about ten hours with his children since the accident with no overnight visits.
 {¶ 13} On cross-examination appellant admitted that he never told C.J. Cross about the four-wheeler accident and that he walked into their February interview a healthy man. Appellant further admitted that he had told Ms. Cross he saw his children every other weekend including overnight visits.
 {¶ 14} At the conclusion of the case, a jury found appellant guilty as charged. Following a sentencing hearing, the trial court sentenced appellant to a life term on the rape count concurrent with a five year term on the count of gross sexual imposition. The parties stipulated to appellant's classification as a sexually oriented offender.
 {¶ 15} Appellant timely appealed raising the following two assignments of error for our consideration:
 {¶ 16} "I. THE DEFENDANT-APPELLANT WAS NOT RENDERED THE EFFECTIVE ASSISTANCE OF COUNSEL DURING THE VOIR DIRE STAGE OF THE TRIAL.
 {¶ 17} "II. THE DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL DURING THE PRESENTATION OF THE STATE'S CASE IN CHIEF BY FAILING TO JBJECT TO HEARSAY TESTIMONY AND FAILING TO IMPROPERLY IMPEACH STATE'S WITNESSES."
 I. {¶ 18} In his First Assignment of Error, appellant asserts that his counsel provided ineffective assistance by conducting an incomplete voir dire examination of prospective jurors. We disagree.
 {¶ 19} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 506 U.S. 364,113 S.Ct. 838, 122 L.Ed.2d 180; Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 20} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St. 3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 21} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
 {¶ 22} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quotingStrickland at 697. Accordingly, we will direct our attention to the second prong of the Strickland test.
 {¶ 23} "`The conduct of voir dire by defense counsel does not have to take a particular form, nor do specific questions have to be asked.'"State v. Smith, 87 Ohio St.3d at 440, 721 N.E.2d at 110, quoting Statev. Evans (1992), 63 Ohio St.3d 231, 247, 586 N.E.2d 1042, 1056. Moreover, this court "will not second-guess trial strategy decisions" such as those made in voir dire, and "`a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Mason,82 Ohio St.3d at 157-158, 694 N.E.2d at 949, quoting Strickland,466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694; see, also, Statev. Cornwell (1999), 86 Ohio St.3d 560, 569, 715 N.E.2d 1144, 1153.
 {¶ 24} Counsel "need not repeat questions about topics already covered by * * * opposing counsel, or the judge." State v. Watson (1991),61 Ohio St.3d 1, 13, 572 N.E.2d 97. Further, "[c]ounsel were present for voir dire and could see and hear the jurors answer questions. [They] were in a much better position" to judge such issues. State v. Bradley,42 Ohio St.3d at 143, 538 N.E.2d 373. The courts have previously rejected similar challenges to the manner in which counsel questioned jurors during voir dire. See, e.g., State v. Goodwin (1999), 84 Ohio St.3d 331,335, 703 N.E.2d 1251 (counsel's decision "not to question jurors further" about their death-penalty views was an "exercise of their discretionary judgment"); State v. Evans, 63 Ohio St.3d at 247, 586 N.E.2d 1042
(ineffective assistance not established by the fact that counsel in general voir dire only briefly asked jurors about their attitude concerning the death penalty).
 {¶ 25} Appellant's complaints mostly amount to hindsight views about how current counsel might have voir dired the jury differently. To establish prejudice requires proving that "a reasonable probability [exists] that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley, 42 Ohio St.3d 136,538 N.E.2d 373, paragraph three of the syllabus. Appellant has not demonstrated that more extensive questioning of the array would have created a "reasonable probability" of a different trial result.
 {¶ 26} Thus, we find that this claim has no merit.
 {¶ 27} Appellant's First Assignment of Error is overruled.
 II. {¶ 28} In his Second Assignment of Error, appellant maintains that his trial counsel was ineffective in failing to object to hearsay testimony offered by the State's expert witnesses and in failing to properly impeach the victim's mother. We disagree.
 {¶ 29} Appellant's first claim is that the State's expert, Dr. Robin Tener was allowed to testify to statement made to her by the victim's mother; the victim; to specific instances of forcible rape; and that the child's statements were consistent with her reports to the Stark County Department of Jobs and Family Services. (SCDJFS). Appellant claims prejudice because he was not charged with forcible rape.
 {¶ 30} Appellant next argues that the testimony of nurse practitioner Donna Abbott that "It's an old wives tail someone can tell whether a girl has had sex for the first time because something on the body changes. That's not true especially when there aren't clear allegations of penetration. I wouldn't expect to see any type of body damage" was unsolicited and prejudicial to appellant. (2T. at 248).
 {¶ 31} In the case at bar, trial counsel's failure to object was a tactical decision. The trial judge stated on the record:
 {¶ 32} "A number of statements have been made by Dr. Tener that are clearly based on statements made other than the victim in this particular case, and I'm not really aware of the exception to the hearsay rule that allows those statements to come in.
 {¶ 33} "None of them have been particularly prejudicial to anybody except that it's been a consistent stream of allowing Dr. Tener to say what she found out and what the mother told her about things other than the, in my opinion, the child being there for medical purposes.
 {¶ 34} "And I am just putting it on the record. I have had the discussion with counsel. They are aware that this has come in and there are — they are making a decision to let what they want to come in, what they don't want to come in.
 {¶ 35} "So the record should reflect that there is a conscious strategic decision by Defense Counsel to permit certain pieces of information in. I have no objection to it. I just want to make sure that the record reflects that issue, okay.
 {¶ 36} "* * *
 {¶ 37} "[Defense Counsel]: Thank you. Your Honor.
 {¶ 38} "[Defense Counsel]: For the record, our failure to object or decision not to object to certain elements of hearsay that has come in does not constitute any sort of waiver of our right to object to the hearsay.
 {¶ 39} "[The Court]: Oh, no. That's why we are having this." (2T. at 190-92.)
 {¶ 40} "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect. See Strickland, 466 U.S., at 690,104 S.Ct. 2052 (counsel is `strongly presumed' to make decisions in the exercise of professional judgment). Moreover, even if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight. See Bell, supra, at 702, 122 S.Ct. 1843; Kimmelman v.Morrison, 477 U.S. 365, 382, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986);Strickland, supra, at 689, 104 S.Ct. 2052; United States v. Cronic,466 U.S. 648, 656, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)". Yarborough v.Gentry (2003), 540 U.S. 1, 8, 124 S.Ct. 1, 6.
 {¶ 41} The Ohio Supreme Court has stated "[w]e will ordinarily refrain from second-guessing strategic decisions counsel make at trial, even where counsel's trial strategy was questionable. State v. Clayton
(1980), 62 Ohio St.2d 45, 49, 16 O.O.3d 35, 402 N.E.2d 1189." State v.Myers (2002), 97 Ohio St.3d 335, 362, 780 N.E.2d 186, 217.
 {¶ 42} Additionally, we note that plain error cannot be used to negate a deliberate, tactical decision by trial counsel. State v. Clayton
(1980), 62 Ohio St.2d 45, 46-48, 402 N.E.2d 1189, 1190-1192, citing Statev. Wolery (1976), 46 Ohio St.2d 316, 75 O.O.2d 366, 348 N.E.2d 351. It is apparent that defense counsel's decisions regarding the witnesses' testimony were tactical.
 {¶ 43} Tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance of counsel. State v. Carter (1995), 72 Ohio St.3d 545, 558, 651 N.E.2d 965. Here, we find that trial counsel's tactical decision to expose the weakness in Dr. Tener's testimony rather than objecting to her direct testimony was not deficient.
 {¶ 44} The same is true with respect to the testimony of nurse practitioner Donna Abbott. In context what Nurse Abbott stated in response to the prosecutor's question concerning the fact that the physical examination of the victim revealed no physical findings supporting sexual conduct: "[The victim] wasn't alleging any type of penetration. Even when children allege penetration, it's extremely rare for us to see physical findings . . ." (2T. at 248). Appellant established on cross-examination of Nurse Abbott that the victim alleged only oral to genital contact and that the perpetrator "rubs penis on butt." (Id. at 250).
 {¶ 45} In the case at bar, "[t]rial counsel was attempting to show that the psychologist lacked sufficient documentation to evaluate these children, was unaware of inconsistent reports in at least one of those documents, and was simply basing her diagnosis upon their statements at the evaluation. Even a questionable trial strategy does not compel a finding of ineffective assistance of counsel. State v. Smith,89 Ohio St.3d 323, 328, 731 N.E.2d 645, 2000-Ohio-166". State v. Smith,
12th Dist. No. CA2004-02-039, 2005-Ohio-63 at ¶ 24-25.
 {¶ 46} While the court acknowledges that the testimony of Dr. Tener, may have been hearsay under State v. Chappell (1994), 97 Ohio App.3d 515,528-535, 646 N.E.2d 1191, as in Chappell, this testimony was cumulative to the testimony presented by the victim and harmless. Where there is sufficient independent evidence of a defendant's guilt, which renders the admitted statement harmless, there is no prejudice and reversal is unwarranted. State v. Moritz (1980), 63 Ohio St.2d 150, 407 N.E.2d 1268. As in Chappell, the alleged victim in this case, testified at trial and was subjected to full cross examination by defense counsel. Chappell,97 Ohio App.3d at 534-535, 646 N.E.2d 1191. The court finds that the admission of the statements made to the expert was harmless and not prejudicial. Since the issue may be disposed of under the second prong of the Strickland test, there is no need to consider whether the testimony of Dr. Tener or Nurse Abbott was admissible or whether failure to object to such testimony was ineffective assistance of counsel.
 {¶ 47} Appellant next contends that trial counsel was ineffective by not impeaching the victim's mother about prior false allegations that she, the victim's mother, had been raped.
 {¶ 48} The testimony concerning the mother's false allegations that she, the mother, had been raped was not admissible for the truth of the matter asserted. (2T. at 303-304). The trial court additionally noted that as the allegation concern the mother and not the child, the testimony would be irrelevant to appellant's case. (Id. at 296-298; 304).
 {¶ 49} Appellant did present evidence concerning the mother's character for using alcohol, drugs and inappropriate behavior with men in the presence of the children. (2T. at 271-73; 314; 316-17). The jury was free to accept or reject any and all of the evidence offered by the appellant and assess the witness's credibility.
 {¶ 50} Where there is sufficient independent evidence of a defendant's guilt, there is no prejudice and reversal is unwarranted. State v.Moritz (1980), 63 Ohio St.2d 150, 407 N.E.2d 1268. The alleged victim in this case, testified at trial and was subjected to full cross examination by defense counsel. As we noted, reversal of a conviction or sentence based on ineffective assistance requires finding both deficient performance and prejudice. Strickland v. Washington, 466 U.S. at 687,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley, 42 Ohio St.3d 136,538 N.E.2d 373.
 {¶ 51} As to appellant's claim of ineffective assistance in regard to failure to impeach the mother, appellant fails to establish prejudice, namely, "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."State v. Bradley, 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus. Since the issue may be disposed of under the second prong of the Strickland test, there is no need to consider whether the impeachment testimony of the mother was admissible or whether failure to offer such testimony was ineffective assistance of counsel.
 {¶ 52} Appellant's Second Assignment of Error is overruled.
 {¶ 53} For the foregoing reasons, the judgment of the Stark County Court of Common Pleas, Ohio, is affirmed.
Gwin, P.J., Farmer, J., and Wise, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Ohio, is affirmed. Costs to appellant.