[Cite as *State v. Milton*, 2013-Ohio-5155.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2013CA00072 |
| CHARLES HENRY MILTON | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal appeal from the Stark County
                             Court of Common Pleas, Case No. 2013-
                             CR-0070

JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      November 18, 2013


APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

JOHN D. FERRERO                         GEORGE URBAN
STARK COUNTY PROSECUTOR                 116 Cleveland Avenue N.W.
BY: KATHLEEN TATARSKY                   808 Courtyard Centre
110 Central Plaza South                 Canton, OH 44702
Canton, OH  44702-1413

*Gwin, P.J.*

{¶1} Appellant Charles Henry Milton ["Milton"] appeals his convictions and sentences after a jury trial in the Stark County Court of Common Pleas for three counts of Trafficking in Cocaine, felonies of the fifth degree in violation of R.C. 2925.03(A)(1)(C)(4)(A).

*Facts and Procedural History*

**1. Officer Zachary Taylor observes November 8, 2010 drug buy.**

{¶2} In 2010, Canton City police officer Zachary Taylor was assigned to work with the FBI Task Force to conduct undercover narcotics investigations. On November 8, 2010, he was asked to do a "buy" with a confidential informant ["C.I."] provided by the FBI. He met with the C.I. and together they placed a telephone call to a "target" who turned out to be Milton. During the telephone conversation, Officer Taylor and the C.I. were instructed to travel to a Laundromat at the corner of 9th and Dueber in Canton, Ohio for the cocaine buy. Officer Taylor prepared the C.I. for the "controlled purchase" by checking him for contraband and money.

{¶3} It was around 2:00 in the afternoon. Officer Taylor was able to observe the drug transaction. Milton was driving a blue Dodge Caliber. Milton told the C.I. to follow him to the corner of 9th and Hafer Court. At a garage directly behind 616 Dueber S.W., the buy was made. The C.I. walked over to the driver's side of Milton's car, reached in the window with his left hand and exchanged $200.00 for two loose rocks of crack cocaine. The C.I. immediately reentered the passenger seat of the truck Officer Taylor was driving and gave the cocaine to Taylor who placed it in an evidence bag.

**{¶4}** When the buy was over, Officer Taylor checked the C.I. again to make sure that he had not pocketed any drugs. Officer Taylor turned the C.I. and the crack cocaine into Canton Detective Mike Volpe, who was also assigned to the undercover FBI task force.

**{¶5}** Jay Spencer of the Stark County Crime Laboratory tested the rock like substance submitted by Volpe and found it to be crack cocaine.

**2. Officer Joseph Mongold observed January 4, 2011 drug buy.**

**{¶6}** In 2011, Canton City police officer Joseph Mongold was assigned to the Canton Gang Task Force working with the FBI Task Force in the investigation of illegal drugs in the Canton area. Mongold was assigned to work an undercover drug investigation of Milton along with a C.I. Officer Mongold prepared the C.I. for the "controlled purchase" by checking him for contraband and money. He then gave the C.I. $200.00 to make the drug purchase. Officer Mongold drove the C.I. to the Family Dollar Store on East Tuscarawas and Riverside, Canton, Ohio.

**{¶7}** Milton pulled into the Family Dollar in a gray Dodge Charger and motioned the C.I. to come over to the car. The C.I. handed Milton the money he had been given by Officer Mongold and Milton gave the C.I. the crack cocaine. The C.I. returned to the vehicle, gave Officer Mongold several loose off white rocks of crack cocaine. Officer Mongold tagged these as evidence. It was turned over to the Stark County Crime Laboratory and tested positive for crack cocaine.

**3. Milton sold crack cocaine to Officer Mongold on January 19, 2011.**

**{¶8}** Milton sold crack cocaine on January 19, 2011 near 11th and Prospect SW., Canton, Ohio. This time, however, Officer Mongold was out of uniform and

undercover. Officer Mongold personally made the buy. Officer Mongold went to Milton's vehicle. Milton rolled the window down and took a plastic bag of crack cocaine out of the center console, counted out several off white rocks and exchanged it for $200.00. Milton told Officer Mongold, ¨if you need anything else, give me a call."

**{¶9}** Officer Mongold turned over the off-white rocks to an agent with the FBI Task Force and it tested positive for crack cocaine.

**{¶10}** Testimony was presented that because the investigation of Milton was a long-term investigation, the moneys used for the drug buys were not photographed. So too, the buys were not recorded either by audio or visual equipment.

**{¶11}** Milton was secretly indicted on four counts of count of Trafficking In Cocaine, R.C. 2925.03(A)(1)(C)(4)(b), felonies of the fourth degree and two counts Trafficking In Cocaine, RC 2925.03(A)(1)(C)(4)(A), felonies of the fifth degree. However, prior to the start of trial the state dismissed three charges and amended the remaining charges to reflect Trafficking in Cocaine, felonies of the fifth degree.

**{¶12}** At the conclusion of the trial, the jury found Milton guilty of three counts of Trafficking in Cocaine, felonies of the fifth degree. The trial court then imposed an aggregate prison sentence of 36 months.

*Assignments of Error*

**{¶13}** Milton raises three assignments of error,

**{¶14}** "I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ALLOWED THE ADMISSION OF PREJUDICIAL EVIDENCE THAT DID NOT REFLECT THE CRIMES ALLEGED IN THE BILL OF PARTICULARS.

{¶15} "II. APPELLANTS CONVICTION WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶16} "III. APPELLANT'S CONSTITUTIONAL RIGHT AS GUARANTEED BY SECTION 28, ARTICLE II OF THE OHIO CONSTITUTION AND SECTION 10 ARTICLE I OF THE UNITED STATES CONSTITUTION TO BE PROTECTED FROM EX POST FACTO LAWS WAS VIOLATED WHEN THE TRIAL COURT IMPOSED A PRISON SENTENCE."

I.

{¶17} In his first assignment of error, Milton claims the trial court abused its discretion when it allowed the state to admit crime laboratory reports that did not match the amount of crack cocaine alleged to have been sold by him as detailed in the bill of particulars.

{¶18} During Milton's jury trial, defense counsel objected to the admission of a Stark County Crime Laboratory Report that reflected .98 grams of crack cocaine because the Bill of Particulars furnished by the state in discovery stated .92 grams of crack cocaine. (T. at 151; 155-58). The second objection made counsel occurred when the state moved to admit a crime lab sheet that reflected .179 grams of crack cocaine. The basis for that objection was that the specific crime alleging the sale of .179 grams of crack cocaine was one of the counts that the state had dismissed prior to the start of trial. (T. at 153). The trial court overruled both objections and permitted the two crime lab sheets to be admitted as evidence and submitted to the jury.

{¶19} "It is axiomatic that a determination as to the admissibility of evidence is a matter within the sound discretion of the trial court. See *Calderon v. Sharkey* (1982), 70

Ohio St.2d 218, 24 O.O.3d 322, 436 N.E.2d 1008. The issue of whether testimony is relevant or irrelevant, confusing or misleading is best decided by the trial judge who is in a significantly better position to analyze the impact of the evidence on the jury." *State v. Taylor*, 39 Ohio St.3d 162, 164, 529 N.E.2d 1382(1988).

**{¶20}** In the case at bar, the state dismissed counts 2, 3 and 6 of the indictment prior to trial. Milton was convicted on counts 1, 4 and 5.

**{¶21}** Count 1 alleged that Milton sold .54 grams of crack cocaine on November 8, 2010. The state submitted the correct Stark County Laboratory sheet for Count 1.

**{¶22}** Count 4 alleged Milton sold 1.31 grams of crack cocaine on January 19, 2011. However, the state mistakenly submitted the Stark County Crime Laboratory report for Count 2 in support of this charge. [State's Exhibit 1A]. Count 2 had alleged that Milton sold .179 grams of crack cocaine on November 15, 2010. Count 2 had been dismissed before trial.

**{¶23}** Count 5 alleged that Milton sold .092 grams of crack cocaine on January 4, 2011. The state mistakenly submitted a Stark County Laboratory report showing .98 grams of crack cocaine. [State's Exhibit 3A] Apparently, the laboratory report that was admitted into evidence related to an alleged sale on January 11, 2011 for which Milton was never charged.

**{¶24}** It is clear that the trial court erred by allowing the state to introduce and present to the jury State's Exhibit's 1A and 3A.

**{¶25}** Even assuming the admission of the two laboratory reports was erroneous, we would conclude, from a review of the entire record, that such error would be "harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 87 S.Ct.

824, 17 L.Ed.2d 705(1967); *Harrington v. California*, 395 U.S. 250, 89 S .Ct. 1726, 23 L.Ed.2d 284(1969); *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340(1972).

{¶26} The state's argument that the amount of crack cocaine Milton sold is not determinative of whether he sold or offered to sell the drugs and does not affect the penalty for conviction is somewhat disingenuous. So is the state's argument that only an "offer to sell" is needed in order to convict an individual of trafficking in cocaine. One is certainly left to wonder why, then, the state went to the effort and expense to have the substances analyzed, and further to present witnesses and documents to the jury attempting to prove the substance was in fact cocaine, if the state is confident that such evidence is unnecessary and would not be persuasive to the jury.

{¶27} In any event, we find from a review of the record in this particular case that the state did provide all six of the laboratory reports in support of the six charges originally contained in the Indictment to the defense in advance of trial. Reports in support of count four and count five accurately reflect the correct amounts and that the substance were in fact crack cocaine.

{¶28} We must be mindful of the " * * * elementary proposition of law that an appellant, in order to secure reversal of a judgment against him, must not only show some error but must also show that that error was prejudicial to him." See *Smith v. Flesher*, 12 Ohio St.2d 107, 233 N.E.2d 137(1967); *State v. Stanton*, 15 Ohio St.2d 215, 217, 239 N.E.2d 92, 94(1968); *Wachovia Mtg. Corp. v. Aleshire,* 5th Dist. Licking No. 09 CA 4, 2009–Ohio–5097, ¶16. See, also, App. R. 12(D). In making a Crim.R. 52(A) harmless error analysis, any error will be deemed harmless if it did not affect the

accused's "substantial rights." Otherwise stated, the accused has a constitutional guarantee to a trial free from prejudicial error, not necessarily one free of all error. Before constitutional error can be considered harmless, we must be able to "declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 87 S.Ct. 824, 17 L.Ed.2d 705(1967). Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal. *State v. Lytle*, 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623(1976), paragraph three of the syllabus, *vacated on other grounds in* 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154(1978). *Accord, State v. Hood,* 135 Ohio St.3d 137, 2012-Ohio-6208, 984 N.E.2d 1057, ¶29.

{¶29} Milton has failed to articulate any real prejudice. The laboratory reports were cumulative to the testimony of the officers who had observed the transactions contemporaneously. There is sufficient independent evidence of Milton's guilt, which renders the admitted laboratory reports harmless, there is no prejudice and reversal is unwarranted. *State v. Moritz*, 63 Ohio St.2d 150, 407 N.E.2d 1268(1980). (*Citing Schneble v. Florida*, 405 U.S. 427, 430, 92 S.Ct. 1056, 1059(1972)); *State v. Stevenson*, 5th Dist. Stark No. 2005-CA-00011, 2005-Ohio-5216, ¶ 46.

{¶30} Milton's first assignment of error is overruled.

II.

{¶31} In his second assignment of error, Milton contends that his convictions are against the sufficiency of the evidence and against the manifest weight of the evidence, respectively.

**{¶32}** Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶ 146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶ 68.

**{¶33}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed. 1990) at 1594.

**{¶34}** When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting

testimony. Id. at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, supra, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

\* \* \*

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶35} R.C. 2925.03(A) (1) sets forth the essential elements of trafficking in drugs: "No person shall knowingly sell or offer to sell a controlled substance."

{¶36} In the case at bar, to find Milton guilty of trafficking in drugs in violation of R.C. 2925.03(A)(1)(C)(4)(a) as alleged in the indictment the trier of fact, in this case the

jury, would have to find that Milton sold or offered to sell a controlled substance and the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine.

**{¶37}** It is well established that a person can be convicted for offering to sell a controlled substance in violation of R.C. 2925.03(A)(1) without actually transferring a controlled substance to the buyer. *State v. Scott*, 69 Ohio St.2d 439, 440, 432 N.E.2d 798(1982), at syllabus; *State v. Patterson*, 69 Ohio St.2d 445, 467, 432 N.E.2d 802. (1982); *State v. Mughni*, 33 Ohio St.3d 65, 514 N.E.2d 870(1987), fn. 1. The offense is complete under R.C. 2925.03(A)(1) when a person knowingly offers to sell a controlled substance. *Mughni,* 33 Ohio St.3d at 68, 514 N.E.2d 870. The conduct proscribed by the statute is *offering to sell* a controlled substance, not offering the controlled substance. *Scott,* 69 Ohio St.2d at 440, 432 N.E.2d 798.

**1. Officer Zachary Taylor observed the November 8, 2010 drug buy.**

**{¶38}** In the case at bar, Officer Taylor testified that he got a good look at Milton who was driving a blue Dodge Caliber because Officer Taylor's vehicle was beside Milton's vehicle. It was daylight. Officer Taylor observed the C.I. reach into Milton's vehicle with his left hand and exchange currency. The C.I. retrieved something, which he cupped in his right hand as he returned to Officer Taylor's vehicle. Officer Taylor immediately received from the C.I.'s hand "two loose individual rocks of crack cocaine." (T. at 110).

**{¶39}** Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Milton committed the crime of trafficking in drugs in violation of R.C.

2925.03(A)(1)(C)(4)(a) as alleged in the indictment. We hold, therefore, that the state met its burden of production regarding each element of the crime and, accordingly, there was sufficient evidence to support Milton's conviction.

**2. Officer Joseph Mongold observed the January 4, 2011 drug buy.**

**{¶40}** Officer Mongold testifed that on January 4, 2011 he observed Milton in a gray Charger parked in a Family Dollar store parking lot in Canton, Ohio. It was daytime. Officer Mongold observed the C.I. walk up to the gray Charger, hand money to Milton and Milton place something in the hand of the C.I. The C.I. returned directly to Officer Mongold's vehicle, at which time he handed Officer Mongold several off white rocks of crack cocaine. (T. at 83). Officer Mongold testifed that he has had the opportunity to observe crack cocaine hundreds of times in the past. (Id. at 85). Based upon his training and experience, Officer Mongold believed what the C.I. handed to him on January 4, 2011 was crack cocaine. (Id.).

**{¶41}** Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Milton committed the crime of trafficking in drugs in violation of R.C. 2925.03(A)(1)(C)(4)(a) as alleged in the indictment. We hold, therefore, that the state met its burden of production regarding each element of the crime and, accordingly, there was sufficient evidence to support Milton's conviction.

**3. Milton sold crack cocaine to Officer Mongold on January 19, 2011.**

**{¶42}** On January 19, 2011, Officer Milton was working undercover with the FBI Task Force. At 8:30 p.m. on January 11, 2011, Officer Mongold met Milton. Officer Mongold got out of his vehicle and walked over to the vehicle Milton was driving. Officer

Mongold handed Milton $200.00 and received an off-white substance, which Officer Mongold testifed was crack cocaine.

**{¶43}** Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Milton committed the crime of trafficking in drugs in violation of R.C. 2925.03(A)(1)(C)(4)(a) as alleged in the indictment. We hold, therefore, that the state met its burden of production regarding each element of the crime and, accordingly, there was sufficient evidence to support Milton's conviction.

**{¶44}** Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai,* 7th Dist. No. 07 MA 198, 2008-Ohio-6635, ¶31, *quoting State v. Woullard,* 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964, ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th Dist. No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(1999).

**{¶45}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

**{¶46}** Although Milton cross-examined the witnesses and argued that the drug buys could have been, but were not, recorded and further, that the money used to allegedly buy the drugs was not photographed or recorded, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". *State v. Craig*, 10th Dist. No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, supra.

> "[I]n determining whether the judgment below is manifestly against
> the weight of the evidence, every reasonable intendment and every

reasonable presumption must be made in favor of the judgment and the finding of facts.

* * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978).

**{¶47}** In *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954), the Supreme Court further cautioned,

The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

A fundamental premise of our criminal trial system is that "the *jury* is the lie detector." *United States v. Barnard,* 490 F.2d 907, 912 (9th Cir. 1973) (emphasis added), cert. denied, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the "part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men." *Aetna Life Ins. Co. v. Ward,* 140 U.S. 76, 88, 11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891).

**{¶48}** *United States v. Scheffer* (1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267(1997).

**{¶49}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost its way nor created a miscarriage of justice in convicting Monk of the charges.

**{¶50}** Based upon the foregoing and the entire record in this matter, we find Milton's convictions were not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before it. The jury as a trier of fact can reach different conclusions concerning the credibility of the testimony of the officers. This court will not disturb that jury's finding so long as competent evidence was present to support it. *State v. Walker*, 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The jury heard the witnesses, evaluated the evidence, and was convinced of Milton's guilt.

{¶51} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes beyond a reasonable doubt.

{¶52} Milton's second assignment of error is overruled.

III.

{¶53} In his third assignment of error, Milton argues that the trial court should not have sentenced him pursuant to the version of R.C. 2929.13 that became effective March 22, 2013.

{¶54} R.C. 2929.13 was amended as part of 2011 Am.Sub.H.B. No. 86. R.C. 2929.13 was amended to provide that, relevant to the case at bar, a trial court must sentence an offender convicted of a fifth degree felony to community control sanctions rather than prison. However, several exceptions to this presumption are contained within 2929.13. Most notably, the presumption is defeated if the offender has a prior felony conviction. R.C. 2929.13(B)(1)(a)(i). In the case at bar, Milton concedes the commission of previous felonies and a previous prison term. However, Milton claims that this version of R.C. 2929.13 increased his punishment, therefore, the application of the amended version of R.C. 2929.13 is prohibited by the ex post facto clause of the Ohio Constitution, Article II, Section 28 and the U.S. Constitution, Article I, Section 10.

{¶55} Retroactive changes in the measure of punishment are impermissibly ex post facto if they subject a defendant to a more severe sentence than was available at the time of the offense. See *Lindsey v. Washington*, 301 U.S. 397, 401, 57 S.Ct. 797, 81 L.Ed. 1182(1937); *State v. Walls,* 96 Ohio St.2d at 447, 2002-Ohio-5059, 775 N.E.2d 841, ¶29. A "speculative and attenuated" possibility that the statutory change has

increased the measure of punishment will *not* constitute an ex post facto violation. *California Dept. of Corrections v. Morales*, 514 U.S. 499, 510, 115 S.Ct. 1597, 131 L.Ed.2d 588(1995) In other words, Milton must demonstrate that he had more than a speculative chance under the old law of receiving community control sanctions instead of prison. *State v. Walls,* supra, 96 Ohio St.2d at 448, 2002-Ohio-5059 at ¶ 30, 775 N.E.2d at 841. *Accord, State v. Paynter*, 5th Dist. Muskingum No. CT2006-0034, 2006-Ohio-5542, ¶32.

{¶56} R.C. 2929.13(B), in effect at the time Milton committed the crimes stated,

(B)(1) Except as provided in division (B)(2), (E), (F), or (G) of this section, in sentencing an offender for a felony of the fourth or fifth degree, the sentencing court shall determine whether any of the following apply:

(a) In committing the offense, the offender caused physical harm to a person.

(b) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person with a deadly weapon.

(c) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person, and the offender previously was convicted of an offense that caused physical harm to a person.

(d) The offender held a public office or position of trust and the offense related to that office or position; the offender's position obliged the offender to prevent the offense or to bring those committing it to justice; or

the offender's professional reputation or position facilitated the offense or was likely to influence the future conduct of others.

(e) The offender committed the offense for hire or as part of an organized criminal activity.

(f) The offense is a sex offense that is a fourth or fifth degree felony violation of section 2907.03, 2907.04, 2907.05, 2907.22, 2907.31, 2907.321, 2907.322, 2907.323, or 2907.34 of the Revised Code.

(g) The offender at the time of the offense was serving, or the offender previously had served, a prison term.

(h) The offender committed the offense while under a community control sanction, while on probation, or while released from custody on a bond or personal recognizance.

(i) The offender committed the offense while in possession of a firearm.

(2)(a) If the court makes a finding described in division (B)(1)(a), (b), (c), (d), (e), (f), (g), (h), or (i) of this section and if the court, after considering the factors set forth in section 2929.12 of the Revised Code, finds that a prison term is consistent with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code and finds that the offender is not amenable to an available community control sanction, the court shall impose a prison term upon the offender.

(b) Except as provided in division (E), (F), or (G) of this section, if the court does not make a finding described in division (B)(1)(a), (b), (c),

(d), (e), (f), (g), (h), or (i) of this section and if the court, after considering the factors set forth in section 2929.12 of the Revised Code, finds that a community control sanction or combination of community control sanctions is consistent with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code, the court shall impose a community control sanction or combination of community control sanctions upon the offender.

CREDIT(S)

(2010 S 58, eff. 9-17-10; 2008 H 130, eff. 4-7-09; 2008 H 280, eff. 4-7-09; 2008 S 183, eff. 9-11-08; 2007 S 10, eff. 1-1-08; 2006 S 281, eff. 4-5-07; 2006 H 461, eff. 4-4-07; 2006 S 260, eff. 1-2-07; 2006 H 95, eff. 8-3-06; 2004 H 473, eff. 4-29-05; 2004 H 163, eff. 9-23-04; 2004 H 52, eff. 6-1-04; 2003 S 5, § 3, eff. 1-1-04; 2003 S 5, § 1, eff. 7-31-03; 2002 S 123, eff. 1-1-04; 2002 H 485, eff. 6-13-02; 2002 H 327, eff. 7-8-02; 2000 S 222, eff. 3-22-01; 2000 H 528, eff. 2-13-01; 1999 S 22, eff. 5-17-00; 1999 S 107, eff. 3-23-00; 1999 S 142, eff. 2-3-00; 1998 H 122, eff. 7-29-98; 1998 H 293, eff. 3-17-98; 1997 S 111, eff. 3-17-98; 1997 H 32, eff. 3-10-98; 1996 H 180, eff. 1-1-97; 1996 S 166, eff. 10-17-96; 1996 S 269, eff. 7-1-96; 1996 H 445, eff. 9-3-96; 1995 S 2, eff. 7-1-96)

{¶57} This previous version of R.C. 2929.13 was analyzed by the Ohio Supreme Court in *State v. Foster*, 109 Ohio St.3d 1, 845 N.E. 2d 470, 2006-Ohio-856. In *Foster*, the Ohio Supreme Court observed that, "[c]ommunity control is the default sentence for felonies of the fourth and fifth degree, except for those identified as mandatory prison

offenses." *Foster* at ¶ 68. However, *Foster* held that there is no presumption in favor of community control. Id. at ¶69. In *Foster,* the Ohio Supreme Court held that R.C. 2929.13(B)(2)(a) "permit[s] a judge to impose prison rather than community control without R.C. 2929.13(B) findings." *Foster,* ¶70. The Court explained,

> If no findings are made under R.C. 2929.13(B)(1)(a) through (i), the court must find that a community-control sanction meets the principles of sentencing under R.C. 2929.11 before it must impose community control. Thus, a judge who does not make one of the (B)(1) findings and does not find that community control is a sufficient sanction could still impose a prison term.

*Foster,* at ¶ 69; *State v. Sharp,* 10th Dist. Franklin No. 05AP-809, 2006-Ohio-3448; *State v. Nichols*, 5th Dist. Licking No. 2007 CA 0120, 2008-Ohio-4345, ¶12.

**{¶58}** In the case at bar, the trial court stated during Milton's sentencing hearing, in relevant part,

> The Court finds that the Defendant has both prior felony convictions and also that the Defendant has served a prior prison term, at least one, he's actually served two, which pull him out of the statute. The Court has applied all of the respective felony criteria that the Court is required to look at under 2929.13, as well as the other sentencing statutes.

**{¶59}** The Court finds that the Defendant is not amenable to an available community control sanction, these are multiple offenses on multiple dates. And the Court is going to issue a sentence on felony--on the first count that was before the jury of 12 months in an appropriate state correctional facility. He would

be given credit for any time served on that offense. It being a felony of the fifth degree, at this point in time the Court taking judicial notice of the fact that the indictment was amended to pull out any higher rated offenses and all we have are three felony five counts here, he would be sentenced to the 12-month term. He would be given any credit for time served up through today and pending his transfer.

(T. at 214-215).

{¶60} Thus, in the present case, the trial court did not find that community control was a sufficient sanction.

{¶61} To violate the ex post facto clause, "the law must be retrospective so that it applies to events occurring before its enactment and it must disadvantage the person affected by altering the definition of criminal conduct or increasing the punishment for the crime." *State v. Glaude*, 8th Dist. Cuyahoga No. 7375, 1999 WL 684813(Sept. 2, 1999), *citing Lynce v. Mathis*, 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63(1997); *Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17(1981). "The clause prohibits the enactment of any law that criminalizes conduct which was innocent and not punishable at the time it was committed; or that makes the crime more serious than it was when committed; or that inflicts a greater punishment than that prescribed at the time the crime was committed; or that alters the legal rules of evidence either by requiring less or different evidence in order to convict or by eliminating a defense available when the crime was committed." Id*.,* citing *Beazell v. Ohio*, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216(1925); *Calder v. Bull*, 3

Dall. 386, 1 L.Ed. 648(1798); *State v. Dolce*, 92 Ohio App.3d 687, 637 N.E.2d 51(1993).

**{¶62}** R.C. 2929.13 as amended March 22, 2013 does not punish any action that was formerly not a crime or increase the penalty for a crime already committed. The version of R.C. 2929.13 in effect at the time Milton committed the offenses did not mandate community control sanctions. A "speculative and attenuated" possibility that the statutory change has increased the measure of punishment will *not* constitute an ex post facto violation. *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 795 N.E.2d 829, ¶30, *citing California Dept. of Corrections v. Morales,* 514 U.S. 499,509 115 S.Ct. 1597, 131 L.Ed.2d 588(1995). In other words, Milton has failed to demonstrate that he had more than a speculative chance under the old law of being sentenced to community control sanctions instead of prison.

**{¶63}** However, the Stark County Grand Jury indicted Milton on January 16, 2013. He was found guilty by a jury on March 23, 2013 and sentenced the same day.

**{¶64}** Milton argues the trial court must follow the version of R. C. 2929.13 in place immediately prior to its amendment on March 22, 2013, which prohibits a prison term for a non-violent fifth degree felony unless the felony occurred in the last two years prior to sentencing. Because his felony convictions occurred more than 2 years ago, the trial court, Milton contends, was required to sentence him to community control.

**{¶65}** R.C., 2929.13 as effective from September 30, 2011 to and including March 21, 2013 provided, in relevant part,

> (B)(1)(a) Except as provided in division (B)(1)(b) of this section, if
> an offender is convicted of or pleads guilty to a felony of the fourth or fifth

degree that is not an offense of violence, the court shall sentence the offender to a community control sanction of at least one year's duration if all of the following apply:

(i) The offender previously has not been convicted of or pleaded guilty to a felony offense or to an offense of violence that is a misdemeanor *and that the offender committed within two years prior to the offense for which sentence is being imposed.*

(ii) The most serious charge against the offender at the time of sentencing is a felony of the fourth or fifth degree.

(iii) If the court made a request of the department of rehabilitation and correction pursuant to division (B)(1)(c) of this section, the department, within the forty-five-day period specified in that division, provided the court with the names of, contact information for, and program details of one or more community control sanctions of at least one year's duration that are available for persons sentenced by the court.

(b) The court has discretion to impose a prison term upon an offender who is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence if any of the following apply:

(i) The offender committed the offense while having a firearm on or about the offender's person or under the offender's control.

(ii) The offender caused physical harm to another person while committing the offense.

(iii) The offender violated a term of the conditions of bond as set by the court.

(iv) The court made a request of the department of rehabilitation and correction pursuant to division (B)(1)(c) of this section, and the department, within the forty-five-day period specified in that division, did not provide the court with the name of, contact information for, and program details of any community control sanction of at least one year's duration that is available for persons sentenced by the court.

(c) If a court that is sentencing an offender who is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence believes that no community control sanctions are available for its use that, if imposed on the offender, will adequately fulfill the overriding principles and purposes of sentencing, the court shall contact the department of rehabilitation and correction and ask the department to provide the court with the names of, contact information for, and program details of one or more community control sanctions of at least one year's duration that are available for persons sentenced by the court. Not later than forty-five days after receipt of a request from a court under this division, the department shall provide the court with the names of, contact information for, and program details of one or more community control sanctions of at least one year's duration that are available for persons sentenced by the court, if any. Upon making a request under this division that relates to a particular offender, a court shall defer sentencing of that

offender until it receives from the department the names of, contact information for, and program details of one or more community control sanctions of at least one year's duration that are available for persons sentenced by the court or for forty-five days, whichever is the earlier.

If the department provides the court with the names of, contact information for, and program details of one or more community control sanctions of at least one year's duration that are available for persons sentenced by the court within the forty-five-day period specified in this division, the court shall impose upon the offender a community control sanction under division (B)(1)(a) of this section, subject to divisions (B)(1)(b)(i) and (ii) of this section. If the department does not provide the court with the names of, contact information for, and program details of one or more community control sanctions of at least one year's duration that are available for persons sentenced by the court within the forty-five-day period specified in this division, the court may impose upon the offender a prison term under division (B)(1)(b)(iii) of this section.

CREDIT(S)

(2011 H 86, eff. 9-30-11; 2010 S 58, eff. 9-17-10; 2008 H 130, eff. 4-7-09; 2008 H 280, eff. 4-7-09; 2008 S 183, eff. 9-11-08; 2007 S 10, eff. 1-1-08; 2006 S 281, eff. 4-5-07; 2006 H 461, eff. 4-4-07; 2006 S 260, eff. 1-2-07; 2006 H 95, eff. 8-3-06; 2004 H 473, eff. 4-29-05; 2004 H 163, eff. 9-23-04; 2004 H 52, eff. 6-1-04; 2003 S 5, § 3, eff. 1-1-04; 2003 S 5, § 1, eff. 7-31-03; 2002 S 123, eff. 1-1-04; 2002 H 485, eff. 6-13-02; 2002 H 327, eff. 7-

8-02; 2000 S 222, eff. 3-22-01; 2000 H 528, eff. 2-13-01; 1999 S 22, eff. 5-17-00; 1999 S 107, eff. 3-23-00; 1999 S 142, eff. 2-3-00; 1998 H 122, eff. 7-29-98; 1998 H 293, eff. 3-17-98; 1997 S 111, eff. 3-17-98; 1997 H 32, eff. 3-10-98; 1996 H 180, eff. 1-1-97; 1996 S 166, eff. 10-17-96; 1996 S 269, eff. 7-1-96; 1996 H 445, eff. 9-3-96; 1995 S 2, eff. 7-1-96) (Emphasis added).

{¶66} Milton was sentenced on March 23, 2013. 2011 Am.Sub.H.B. No. 86 took effect on March 22, 2013 and clarified the provisions of R.C. 2929.13(b)(1)(b) upon which Milton relies. Under the clarified version, as we have previously noted, the mandatory community control provisions do not apply if the offender previously has been convicted of or pleaded guilty to a felony offense.

{¶67} When the General Assembly adopted the amendments to Section 2929.13, effective September 30, 2011, it addressed the issue of applicability. "The amendments...that are made in this act apply to a person who commits an offense specified or penalized...on or after the effective date of this section and to a person to whom division (B) of section 1.58 of the Revised Code makes the amendments applicable." Am. Sub. H.B. No. 86, Section 4, 2011 Ohio Laws 29. *See, State v. Taylor,* 9th Dist. Summit No. 26279, 2012-Ohio-5403, ¶6. Milton is not "a person who commit [ted] an offense ... on or after the effective date" of House Bill 86. *Id.* Therefore, the version of Section 2929.13 would have applied to him only if he is "a person to whom division (B) of section 1.58 of the Revised Code makes the amendments applicable." *Id.*

{¶68} We note that an "*ex post facto* inquiry does not focus 'on whether a legislative change produces some ambiguous sort of 'disadvantage [.]' *Morales,* 514

U.S. at 506, 115 S.Ct. at 1602, 131 L.Ed.2d at 595, fn. 3. *State v. Rush*, 83 Ohio St.3d 53, 59, 697 N.E.2d 634(1998). In Milton's case, he committed each crime before the amendment to R.C. 2929.13 in 2011. At the time he committed each crime, Milton did not have an "absolute" or "matured" right to be sentenced under R.C. 2929.13 effective from September 30, 2011 to and including March 21, 2013. Nor did he have an "absolute" or "matured" right to be sentenced only to community control sanctions. *See, State v. White*, 132 Ohio St.3d 344, 2012-Ohio-2583, 972 N.E.2d 534, ¶36. Before Milton was sentenced in this case, the legislature amended R.C. 2929.13 to remove any ambiguity as to whether repeat felony offenders were eligible for mandatory community control sanctions. Thus, upon the amendment that became effective March 22, 2013, any right Milton may have had to be sentenced under the version in effect between September 30, 2011 and March 21, 2013 was extinguished. *White*, 132 Ohio St.3d 344, 2012-Ohio-2583, 972 N.E.2d 534, ¶36. As we have already explained, the provisions that became effective March 21, 2013 did not inflict a greater punishment than that prescribed at the time the crimes was committed. No ex post facto violation occurred by the trial court's sentence,

{¶69} Milton's third assignment of error is overruled.

{¶70} The judgment of the Court of Common Pleas, Stark County, Ohio is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Delaney, J., concur

_____

HON. W. SCOTT GWIN

_____

HON. WILLIAM B. HOFFMAN

_____

HON. PATRICIA A. DELANEY

WSG:clw 1101

[Cite as *State v. Milton*, 2013-Ohio-5155.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                         :
                                      :
            Plaintiff-Appellee        :
                                      :
                                      :
-vs-                                  :        JUDGMENT ENTRY
                                      :
CHARLES HENRY MILTON                  :
                                      :
                                      :
            Defendant-Appellant       :        CASE NO. 2013CA00072


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Stark County, Ohio is affirmed.  Costs to appellant.


                                      _____
                                      HON. W. SCOTT GWIN


                                      _____
                                      HON. WILLIAM B. HOFFMAN


                                      _____
                                      HON. PATRICIA A. DELANEY